**UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| MICHAEL C. SKAKEL | : | |
|    Petitioner, | : | Case No. 3:07 CV 1625 (PCD) |
| | : | |
| v. | : | |
| | : | |
| PETER J. MURPHY, | : | January 8, 2009 |
|    Respondent. | : | |

**Memorandum in Support of
<u>Motion For Hearing To Set Bail</u>**

Pursuant to the Fifth, Sixth, and Fourteenth Amendments to the Constitution of the United States, the Petitioner, Michael Skakel, moves for a hearing and the setting of bail pending review of the instant Petition.

**I.**     **Introduction**

On or about early November of 2008, the undersigned counsel received information that, as early as June of 1993, a Madison, Connecticut police officer forwarded a report to the Greenwich Police Department in which one or more additional suspects were identified in connection with the October 30, 1975 murder of Martha Moxley. Specifically, the report contains a letter from Julia Wilson, the sister of Andrew D. Wilson, in which Julia describes her brother's serious mental illness and his accusation that Dirk Peters murdered Martha Moxley. <u>See</u> Report Excerpt dated July 19, 1993, attached hereto as Exhibit A. The report received by the Greenwich Police Department preceded Andrew Wilson's murder of Dirk Peters' father, Jack Peters, on August 5, 1993. <u>See</u> <u>State of Connecticut v. Andrew D. Wilson</u>, 242 Conn. 605 (1997) (attached as Exhibit B). Neither this report, which was in possession of the Greenwich Police Department, nor the identities of the suspects contained therein (Andrew Wilson and Dirk Peters) were ever provided to the defense.

Following review of the reports, undersigned counsel, through his investigators, learned that at least one of the suspects identified in the report, Andrew D. Wilson, was *15 years old* on October 30, 1975, the same age as the Petitioner at the time of the homicide.  See Department of Correction Inmate Information Sheet, Exhibit C; 1975 Central Yearbook Excerpt, Exhibit D.  Preliminary investigation has further revealed that both Andrew Wilson and Dirk Peters were from Greenwich, Connecticut and that Mr. Wilson was familiar with the Belle Haven neighborhood and the Moxley family in particular.  The patently exculpatory information would have been admissible at the Petitioner's trial and adds to the growing list of suspects tied to the murder.

Only a few weeks later, undersigned counsel received additional exculpatory information that was in the possession of the State prior to trial, yet never disclosed to the defense.  On or about December 7, 2008, John M. Regan, Jr., an attorney in Rochester, New York, contacted undersigned counsel and disclosed that at some time in 1998 he was contacted by a State of Connecticut prosecutor regarding its key witness, Gregory Coleman.[1]  See Affidavit of John M. Regan, Jr., Exhibit G.  Attorney Regan has indicated that the 1998 caller identified himself as a prosecutor in

---

[1] Coleman undoubtedly was the State's most important witness since he was the only witness to say without equivocation that Mr. Skakel admitted that he killed Martha Moxley. Coleman attended Elan, a residential behavioral modification program, during the same time period as Mr. Skakel in 1978-1980. Coleman came forward at least 20 years post-Elan after watching a television news magazine story and claimed that Mr. Skakel told him, "I am going to get away with murder because I am a Kennedy." Coleman further claimed Mr. Skakel then said he had made advances to this girl, she spurned his advances, and he drove her head in with a golf club. According to Coleman, Mr. Skakel said that he hit her so hard that the golf club broke in half and that two days later he returned to the body and masturbated on it.

The explosive and prejudicial impact that Gregory Coleman's testimony had cannot be emphasized and is illustrated by the media attention given to it. See, e.g., Front Cover of the *New York Post*, June 21, 2000, "Pal: Skakel said he'd beat rap because he's a Kennedy; I'LL GET AWAY WITH MURDER" attached as Exhibit J.

2

Connecticut,[2] and informed Regan that he was going to use Coleman in a grand jury proceeding seeking to charge Michael Skakel with the murder of Martha Moxley. Attorney Regan, who previously represented Gregory Coleman and various members of his family for many years throughout the 1990s, had personal knowledge that Mr. Coleman was an incorrigible drug addict who would routinely lie in order to get money for drugs. Id. Attorney Regan was incredulous, and stated to the prosecutor that he hoped that he was not serious about using Coleman's testimony to accuse someone of murder. The man responded by telling Attorney Regan not to worry, that they had plenty of evidence, and that they were going to "get this guy."

Attorney Regan later became aware that Mr. Skakel had been convicted of the crime, and he was disturbed to see that Coleman's role as a witness had been prominent. Attorney Regan had assumed there must have been a lot of other solid evidence. Attorney Regan later learned from reading an article written by Robert F. Kennedy, Jr. in the Atlantic Monthly that there had been little other evidence. Despite being aware of this impeaching evidence regarding Mr. Coleman, the State did not make its existence known to the defense at any time before, during or after the Petitioner's criminal trial. See Affidavit of Michael Sherman (trial counsel), attached as Exhibit I.[3]

These most recent discoveries of the State's failure to turn over exculpatory evidence represent yet another pattern of egregious conduct that has worked to further the injustice of the Petitioner's conviction. Because the Petitioner has only just learned of this misconduct, he will be forced into further delay to obtain this Court's final resolution of his numerous claims. Michael Skakel has been imprisoned for over six

---

[2] Based upon information and belief, the undersigned counsel believe that the person who called Mr. Regan was the Chief Inspector, Frank Garr. See Affidavit of Hubert J. Santos, attached hereto as Exhibit H.

[3] Mr. Sherman's unsigned affidavit is attached as Exhibit I. Mr. Sherman has reviewed the affidavit, but has been on vacation and will be submitting a signed copy in the near future.

years on weak evidence, prosecutorial impropriety, and a multitude of federal constitutional violations which are being presented *in toto* for the first time before this Court. His federal habeas corpus petition represents both the extraordinary circumstances and the high probability of success which supports the unusual remedy to set bail during the pendency of this litigation.

## II. History of Proceedings

### A. State Trial Court Proceedings

Mr. Skakel was arrested and charged on January 19, 2000 for the October 30, 1975 murder of Martha Moxley in Greenwich, Connecticut. Mr. Skakel, who was 39 years old on the date of his arrest, was initially presented in juvenile court because he was 15 years old at the time of the homicide. The juvenile court (*Dennis, J.*) granted the State's motion to transfer the matter to the regular criminal docket because of the Petitioner's age.[4] Mr. Skakel moved to dismiss the case under the applicable five-year statute of limitations, which the trial court denied. Following a month-long jury trial, Mr. Skakel was convicted of murder on June 7, 2002. He was sentenced to a term of incarceration of 20 years to life in accordance with the 1975 ***adult*** sentencing laws.

### B. Appellate Proceedings

After the verdict, the Mr. Skakel filed an appeal to the Connecticut Supreme Court. In his brief, Mr. Skakel raised the following claims of error:

1. Whether the trial court erred in concluding that the prosecution of the Defendant was not barred by the 1975 five-year statute of limitations and pursuant to State v. Paradise?

---

[4] Mr. Skakel filed an interlocutory appeal from the transfer order. The Connecticut Supreme Court held that the transfer order was not an appealable final judgment and dismissed the appeal. In re Michael S., 258 Conn. 621, 631 (2001).

2. Whether the State's suppression of exculpatory material requires a new trial?

3. Whether the Juvenile Court erred in transferring this matter to the Adult Criminal Division of the Superior Court?

4. Whether the pervasive prosecutorial misconduct which occurred during the State's summation deprived the Defendant of a fair trial?

5. Whether the admission of prior testimony violated the Defendant's right to confrontation?

6. Whether the admission of the Defendant's involuntary Elan statements resulted in a due process violation?

7. Whether the numerous evidentiary errors, including the admission of supermarket tabloids, warrant a new trial?

See Petitioner's Brief to the Connecticut Supreme Court, Motion for Summary Judgment Appendix dated October 27, 2008 at A7 (hereinafter "S.J. App. Axx"). The Connecticut Supreme Court rejected all of these claims and affirmed the trial court's judgment of guilty. State v. Skakel, 276 Conn. 633, 770 (2006).

After the Connecticut Supreme Court's decision was issued, Mr. Skakel filed a Motion For Reconsideration, To Reargue And For Reconsideration And Reargument En Banc on February 14, 2006. In this Motion, Mr. Skakel argued that the Connecticut Supreme Court's decision regarding the statute of limitations issue, in overruling two of its own prior binding precedents and applying an amendment to the statute of limitations retroactively to revive the prosecution of Mr. Skakel that was previously time-barred, violated the Ex Post Facto Clause and the Due Process Clause of the United States Constitution and the Due Process Clause of the Connecticut Constitution. Mot. for Reconsideration, S.J. App. A185. This issue was not raised in Mr. Skakel's original briefing because trial court had based its statute of limitations decision on an entirely

different ground; Id. at n.1, S.J. App. A186. Thus, the retroactive application of the new statute of limitations did not occur in this case until the Connecticut Supreme Court did so in its decision.

In the Motion For Reconsideration, To Reargue And For Reconsideration And Reargument En Banc, Mr. Skakel also claimed that his transfer from the juvenile docket to adult court was unconstitutional, in violation of his rights under the Due Process and Ex Post Facto Clauses of the United States Constitution. S.J. App. A195. Mr. Skakel argued that the Connecticut Supreme Court's reliance on a 1994 administrative regulation that was not in force at the time the crime was committed denied him his constitutional rights. Id.

Finally, Mr. Skakel also raised a claim in the Motion that the Connecticut Supreme Court's refusal to review *in camera* profile reports that were prepared regarding suspects other than Mr. Skakel deprived him of fundamental fairness. S.J. App. A202. The Connecticut Supreme Court denied the Motion For Reconsideration, To Reargue And For Reconsideration And Reargument En Banc on March 14, 2006.

### C. Federal District Court Proceedings – The Instant Petition For A Writ Of Habeas Corpus

On November 5, 2007, Mr. Skakel filed the instant Petition For A Writ Of Habeas Corpus in the United States District Court for the District of Connecticut, raising the first six claims of error that had been raised before the Connecticut Supreme Court. On December 21, 2007, the Respondent filed his answer to the petition. Pursuant to the scheduling order, the parties were ordered to file cross Motions for Summary Judgment. Those motions and supporting memoranda of law were submitted on October 27, 2008.

In conjunction with the present motion to set bail pending full review of his habeas petition, the Petitioner has also filed a Motion for Leave to Amend which

includes claims regarding the newly discovered Brady violations described in the introductory paragraph. See Motion for Leave to Amend and Memorandum of Law in Support dated January 8, 2009. In addition to the amendment to include the newly discovered evidence, the Petitioner has also included amended claims related to his Petition for New Trial, the appeal of which is currently pending before the Connecticut Supreme Court. Id.

## III. Due To The Extraordinary Circumstances Of The Present Case, Release on Bond Is Appropriate

### A. Standard

"[The District] Court has inherent authority to grant bail to a state prisoner pending full review of his habeas corpus petition in federal court." Ancona v. Lantz, No. 3:05cv363, 2005 WL 839655 (D. Conn, April 8, 2005) (Kravitz, J.), citing Ostrer v. United States, 584 F.2d 594, 596 n. 1 (2d Cir. 1978). "However, the Court may do so only if the petitioner can demonstrate that the habeas petition raises substantial claims and that extraordinary circumstances exist that make the grant of bail necessary to make the habeas remedy effective." Id. (Citations omitted; internal quotation marks omitted.) See also Mapp v. Reno, 241 F.3d 221, 226 (2d. Cir. 2001); Grune v. Coughlin, 913 F.2d 41, 44 (2d Cir. 1990) (holding that an order denying bail pending the disposition of a habeas petition is appealable after obtaining a certificate of probable cause); Iuteri v. Nardoza, 662 F.2d 159 (2d Cir. 1981) (reversing the decision of the district court, *Eginton, J.,* granting bail pending review of his federal habeas claim).

This District Court has previously recognized its inherent authority to grant bail pending federal habeas review, holding that "this power should be exercised sparingly," and only in extraordinary circumstances. Rado v. Meachum, 699 F. Supp. 25 (D. Conn. 1988) (Dorsey, J.). Cases that have presented these kinds of extraordinary circumstances have included petitioners who are in poor health, see Johnston v. Marsh, 227 F.2d 528 (3d Cir. 1955) (diabetic progressing toward blindness), or those with

7

prison sentences so short that the petitioner may serve his full prison sentence even if the petitioner were eventually granted.  See Boyer v. City of Orlando, 402 F.2d 966 (5th Cir. 1968) (petitioner sentenced to 120 days in prison).  Federal habeas petitioners who were previously released on state appellate bonds and were due to surrender following exhaustion of their state appeals have also historically moved for bail pending the district court's decision.  See e.g. Ancona v. Lantz; Rado v. Meachum.

In the present case, the Petitioner's federal habeas petition includes both the substantial constitutional claims and extraordinary circumstances justifying this Court's power to grant bail.

### B. The Petitioner Has Raised Numerous Substantial Constitutional Issues That Have A High Probability Of Success

As this Court is aware, the Petitioner has already filed his memorandum in support of summary judgment, which has fully articulated the substantial nature of the constitutional issues contained in his first five claims of error.  See Petitioner's Memorandum of Law In Support of Motion For Summary Judgment dated October 27, 2008.  This claim include arguments that:

- The Petitioner's conviction was obtained and affirmed in violation of the Ex Post Facto Clause and the Due Process Clause when the Connecticut Supreme Court unexpectedly overruled its own binding interpretation of the applicable statute of limitations in order to authorize the criminal prosecution of the Petitioner that the passage of time had previously barred.  Id. at 24-44.

- The Petitioner's conviction was obtained in violation of his federal constitutional rights to a fair trial and to present a defense, and in violation of Brady v. Maryland, when the trial court denied the Petitioner's Motion For A New Trial and refused to hold an evidentiary hearing regarding the State's suppression of a composite sketch and two profile reports.  Id. at 48-69.

- The Petitioner had a liberty interest in his status as a juvenile offender, and the Connecticut Supreme Court's decision that he was properly transferred to adult court violated the Due Process Clause of the United

8

> States Constitution. This decision denied the Petitioner due process of law when it permitted a state regulation to abrogate his statutory rights under Connecticut General Statutes Sections 17-60a and 17-66. <u>Id.</u> at 69-82.

- The cumulative effect of prosecutorial misconduct so infected the trial with unfairness as to make the conviction a denial of due process. <u>Id.</u> at 84-122.

- The Petitioner's conviction was obtained in violation of his federal due process rights when the trial court improperly admitted coerced confessions made by the Petitioner while he was at the Elan School. <u>Id.</u> at 124-127.

In contrast with those cases in which a petitioner moves for bail pending review prior to submitting briefing on the issues, the fact that this Petitioner has already fully addressed the substantial nature of his first claims should work in his favor. In particular, the Petitioner's claims regarding the State's <u>Brady</u> violations have become substantially more relevant now that further instances of undisclosed exculpatory information have come to light.

In addition to those claims of error that have already been fully briefed to this Court, the Petitioner has also requested leave to amend his habeas petition to include the claims raised in Petition for New Trial which is now pending before the Connecticut Supreme Court. <u>See</u> Motion for Leave to Amend and Memorandum in Support dated January 8, 2009. As with the Petitioner's claims of <u>Brady</u> violations in his original federal habeas corpus petition, many of the issues raised in the Petition for New Trial have taken on new relevance in light of the exculpatory information that was in the possession of the State for over a decade, yet went undisclosed to the defense. While the Connecticut Supreme Court has not yet issued a final decision on the Petitioner's appeal, his briefing to that Court demonstrates the substantial constitutional claims present in that case. <u>See</u> Brief of the Petitioner-Appellant to the Connecticut Supreme Court dated April 11, 2008, attached hereto as Exhibit E. Those claims of a constitutional dimension include arguments that:

- The Petitioner's conviction was obtained in violation of his federal constitutional right to a fair trial and to present a defense when the trial court prevented him from offering newly discovered evidence of third party culpability at a new trial.  See Exhibit D at 5-31.

- The Petitioner's conviction was obtained in violation of his federal constitutional rights to a fair trial, to present a defense, to confront witnesses against him, and in violation of Brady v. Maryland, when the trial court prevented him from offering newly discovered evidence of a secret pact and book deal between the State's lead investigator and an author at a new trial.  Id. at 31-37.

- The Petitioner's conviction was obtained in violation of his federal constitutional rights to a fair trial, to present a defense and to confront witnesses against him when the trial court prevented him from presenting newly discovered evidence in a new trial that directly contradicted the criminal trial testimony of the State's star witness.  Id. at 37-45.

- The Petitioner's conviction was obtained in violation of his federal constitutional rights to a fair trial and to present a defense and in violation of Brady v. Maryland, when the trial court ruled that the State's pattern of nondisclosure of exculpatory evidence and suppression of profile reports and time lapse data did not warrant a new trial.  Id. at 45-60.

Finally, the latest examples of undisclosed exculpatory evidence not only buttress the claims already before this Court, but also stand on their own as a substantial constitutional claims warranting consideration.  The Petitioner's defense has consistently relied on evidence of third party culpability to support his claim that he did not kill Martha Moxley. See Memorandum of Law In Support of Motion For Summary Judgment dated October 27, 2008 at 5-18.  Prior to his conviction, the State had in its possession exculpatory evidence of third party culpability pointing to numerous other suspects that was never disclosed to the defense.  Considered together with the undisclosed exculpatory evidence that casts significant and reasonable doubt on the State's case-in-chief (*i.e.*, the undisclosed book deal between Inspector Garr and Mr. Levitt and the 1998 interview of Attorney Regan), the totality of the nondisclosure

represents a substantial violation that deprived him of his most fundamental constitutional right to a fair trial.

### C. Extraordinary Circumstances Exist Which Makes The Grant Of Bail Necessary In The Present Case

The Petitioner respectfully submits that the sheer magnitude of substantial constitutional claims that are now before this Court on the Amended Petition should justify the unusual remedy of granting bail. However, there are other compelling circumstances justifying bail at this time above and beyond the strength of the claim.

As articulated in his Memorandum of Law in Support of Summary Judgment, the Petitioner has claimed that he had a liberty interest in his status as a juvenile offender, and the Connecticut Supreme Court violated his due process rights when it upheld his improper transfer to adult court. See Memorandum of Law In Support of Motion For Summary Judgment dated October 27, 2008, at 69-82. In connection with this claim, the Petitioner has further argued that his transfer violated the Due Process and Ex Post Facto Clauses because it imposed a greater, more burdensome and more onerous punishment than the law in effect at the time the crime was committed. Id. at 82-84. Should he prevail on this claim, it would mean that, at most, he would have been sentenced to *four years* if he were adjudged delinquent under the juvenile law in effect in 1975. See Conn. Gen. Stat. § 17-69(a)-(b) (Rev. to 1975). Mr. Skakel has now been imprisoned for over *six years*. Thus, the only way for this Court to make his future habeas remedy effective would be to release him on bail pending determination of the claim.

The fact that the Petitioner has been imprisoned for over two years more than his claimed maximum sentence should not be overlooked by this Court. Indeed, while he has spent years exhausting his state appellate remedies, this Court is the first venue in which he has been eligible to seek a bond pending consideration of his claims. See Conn. Gen. Stat. § 54-63f (prohibiting post-conviction bail pending appeal for murder).

Thus, the fact that the Petitioner has been forced to wait over six years for an appellate bail that has long been justified should is another extraordinary circumstance that this Court should consider.

Finally, the latest example of <u>Brady</u> violations discovered by the Petitioner has created an even more extraordinary circumstance warranting bail. Because of the State's egregious conduct, the Petitioner will now be required to remain incarcerated while the circumstances surrounding these new claims are investigated. Their pattern of nondisclosure will force him to effectively start over in his quest for exhaustion. The Petitioner is in no way responsible for this delay, and to be punished with further incarceration is an unjust result. Therefore, admission to bail during review of his claims is the only possible remedy available.

> **D. The Petitioner's Personal Background And Character, His Past History Of Compliance, The Unique Circumstances Of His High-Profile Case And His Close Ties To The Community Establish That He Is An Appropriate Candidate For Bail**

In considering whether Michael Skakel is an appropriate candidate for bail, the most important consideration for this court is that he was fifteen years old at the time of the murder for which he was convicted, and 41 years old at the time of his conviction and sentencing. Prior to his conviction on June 7, 2002, he had no prior criminal convictions and lived an exemplary life committed to helping others overcome the same substance abuse issues with which he struggled as an adolescent. <u>See</u> Defendant's Memorandum in Aid of Sentencing dated August 27, 2002, attached hereto as Exhibit F. In short, he poses absolutely <u>no</u> danger to the community.

Moreover, the unique circumstances of the Petitioner's high-profile case, combined with his close family ties virtually guarantee that there is no risk of flight should the Court set bail in this case. When a warrant for his arrest was issued in January of 2000, the Petitioner, a resident of New York, appeared voluntarily in Connecticut and posted the $500,000.00 bail set by Judge Richard F. Comerford, Jr. of

the Connecticut Superior Court. During pretrial and trial proceedings, the Petitioner appeared in court whenever his presence was required. Throughout the entirety of the re-opened investigation in the 1990's and during the course of his trial and subsequent appeals, the Petitioner has steadfastly maintained his innocence. He remains committed to clearing his name. If bail were to be granted pending determination of his claims raised in the Petition, the Petitioner would reside at any suitable location and under any special conditions that would be acceptable to the Court.

## IV. Conclusion

For all the foregoing reasons, the Petitioner respectfully requests a hearing and the setting of bail pending review.

THE PETITIONER,
MICHAEL C. SKAKEL

By __/s/_____
HUBERT J. SANTOS
Fed. Bar No. 00069
HOPE C. SEELEY
Fed. Bar No. 04863
SANTOS & SEELEY, P.C.
51 Russ Street
Hartford, CT 06106
Tel. (860) 249-6548
Fax (860) 724-5533

## **CERTIFICATION**

      I hereby certify that on January 8, 2009, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system or by mail on anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

Michael O'Hare, Esq.
Office of the Chief State's Attorney
300 Corporate Place
Rocky Hill, CT  06067
Tel. No. (860) 258-5887
Fax No. (860) 258-5968
E-mail: michael.ohare@po.state.ct.us
Federal Bar No. ct 05318


                                                  /s/_____
                                                HOPE C. SEELEY