# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| MICHAEL C. SKAKEL, | : | |
| Petitioner, | : | Case No. 3:07 CV 1625 (PCD) |
| | | |
| v. | : | |
| | | |
| PETER J. MURPHY, | : | MARCH 12, 2009 |
| Respondent. | : | |

## MEMORANDUM IN OPPOSITION TO
## PETITIONER'S MOTION FOR STAY AND ABEYANCE

The respondent hereby opposes the petitioner's motion stay and abeyance of his

amended petition for a writ of habeas corpus.  In his motion, the petition seeks stay and

abeyance of his amended habeas corpus petition in order to exhaust the unexhausted

claims included in the petition pursuant to the United States Supreme Court's ruling in

Rhines v. Weber, 544 U.S. 269, 125 S.Ct. 1528, 161 L.Ed.2d 440 (2005). See Petitioner's

Motion for Stay and Abeyance, dated January 8, 2009 [Document 45] (hereinafter "Motion

for Stay and Abeyance").  The petitioner's motion for stay and abeyance should be denied

because the petitioner "cannot show that there was good cause for his failure to exhaust

his claims first in state court" and because the claims that he seeks a stay in order to

exhaust "are plainly meritless." Rhines, 544 U.S. at 277.

## I.      PROCEDURAL HISTORY

After trial by jury in the Superior Court for the Judicial District of Stamford-Norwalk,

the petitioner was convicted murder, in violation of General Statutes § 53a-54a.  On August

29, 2002, the trial court, *Kavanewsky, J.*, sentenced the petitioner to imprisonment for a

term of twenty years to life.  The petitioner appealed to the Connecticut Supreme Court,

Dockets.Justia.com

which affirmed his conviction on January 24, 2006. State v. Skakel, 276 Conn. 633, 888 A.2d 985 (2006). The petitioner filed a petition for *certiorari* to the United States Supreme Court which was denied on November 13, 2006. Skakel v. Connecticut, __ U.S. __,127 S.Ct. 578, 166 L.Ed.2d 428 (2006).

On August 25, 2005, the petitioner filed a petition for a new trial pursuant to General Statutes § 52-270 in the Superior Court for the Judicial District of Stamford-Norwalk. The trial court, *Karazin, J.*, denied the petition on October 25, 2007. Memorandum of Decision, Skakel v. State, CV05-0006524-S, Judicial District of Stamford-Norwalk, Appendix A. The petitioner appealed and the case is currently pending before the Connecticut Supreme Court. See Skakel v. State, Connecticut Supreme Court Docket No. 18158.

On November 5, 2007, the petitioner filed his application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The respondent filed his answer to the allegations in the petitioner's habeas corpus petition on December 21, 2008. On March 5, 2008, this court ordered the petitioner and the respondent to file cross-motions for summary judgment. The parties filed their cross-motions for summary judgment on October 27, 2008. On January 7, 2009, the petitioner filed his response to the motion for summary judgment filed by the respondent. On January 15, 2009, the respondent filed his response to the motion for summary judgment filed by the petitioner.

On January 8, 2009, the petitioner filed a motion for leave to amend his habeas petition, a motion for stay and abeyance and a motion for a hearing to set bail. Petitioner's Motion for Leave to Amend Petition for a Writ of Habeas Corpus, dated January 8, 2009 [Document 43] (hereinafter "Motion to Amend Petition"); Motion for Stay and Abeyance; and Motion for Hearing to Set Bail, dated January 8, 2009 [Document 47].

## II.   ARGUMENT

On January 8, 2009, more than fourteen months after he initially filed his petition for a writ of habeas corpus, the petitioner filed a motion for leave to amend his petition by adding seven unexhausted claims for relief. Motion to Amend Petition; Additional Pages – Petition for Writ of Habeas Corpus, <u>Michael C. Skakel v. Peter J. Murphy</u> [Document 43-3] (hereinafter "Amended Habeas Corpus Claims") at 11-41.  In addition, the petitioner filed a motion requesting stay and abeyance of the proceedings in order to allow him to return to state court and exhaust his unexhausted claims. Motion for Stay and Abeyance; Petitioner's Memorandum of Law in Support of Motion for Stay and Abeyance, dated January 8, 2009 [Document 46] (hereinafter "Memorandum in Support of Stay"), at 3-5.

The petitioner's motion for stay and abeyance should be denied because he cannot meet the requirements for obtaining a stay under <u>Rhines v. Weber</u>, <u>supra</u>.  Specifically, the petitioner is not entitled to stay and abeyance because he cannot show good cause for his failure to exhaust his claims first in state court and because the unexhausted claims are plainly meritless. <u>See</u> <u>Id</u>., 544 U.S. at 277.[1]

### A.   Law Governing the Stay or Dismissal of "Mixed Petitions"

Federal habeas corpus relief "shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State. . . ."  28 U.S.C. § 2254(b)(1)(A).  Indeed, even if a petitioner can demonstrate a "clear violation" of his rights, federal relief is unwarranted unless available state remedies are exhausted.

---

[1]  The arguments in opposition to the petitioner's motion for stay and abeyance set forth herein largely restate arguments that the respondent asserted in opposition to the petitioner's motion for leave to amend his petition. <u>See</u> Memorandum in Opposition to Petitioner's Motion for Leave to Amend Petition for a Writ of Habeas Corpus at 7-33.

3

Duckworth v. Serrano, 454 U.S. 1, 3-4, 102 S.Ct. 18, 70 L.Ed.2d 1 (1981) (per curium). A claim is not "exhausted" within the meaning of § 2254 unless it has been presented to the state's highest court. O'Sullivan v. Boerckel, 526 U.S. 838, 845-46, 119 S.Ct. 1728, 144 LED.2d 1 (1999). In Rose v. Lundy, 455 U.S. 509, 102 S.Ct. 1198, 1205, 71 LED.2d 379 (1982), the Supreme Court ruled that "a district court must dismiss habeas petitions containing both unexhausted and exhausted claims." Id., 455 U.S. at 522. The court held that such "mixed petitions" must be dismissed in order to give the petitioner the choice of "returning to state court to exhaust his claims or amending or resubmitting the habeas petition to present only unexhausted claims to the district court." Id., at 510.

At the time Lundy was decided, "there was no statute of limitations on the filing of federal habeas corpus petitions." Rhines v. Webber, 544 U.S. at 274. Thus, a habeas petitioner whose mixed petition was dismissed could pursue state relief on his unexhausted claims without fear that the limitations period would run on his exhausted claims. Id. Lundy's requirement for dismissal of mixed petitions, therefore, did not present a significant obstacle to obtaining federal habeas review. Id. In 1996, however, the enactment of AEDPA imposed a one-year statute of limitations on federal habeas corpus claims. See Id.; 28 U.S.C. § 2244(d)(1).

In Rhines v. Weber, supra, the Supreme Court recognized that AEDPA "dramatically altered the landscape for federal habeas corpus petitions" Id., 544 U.S. at 274. "AEDPA preserved Lundy's total exhaustion requirement, see 28 U.S.C. § 2254(b)(1)(A) . . . but it also imposed a 1-year statute of limitations on the filing of federal petitions, § 2244(d)." Rhines, supra, 274. The court observed that "[a]s a result of the interplay between AEDPA's 1-year statute of limitations and Lundy's dismissal requirements, petitioners who

4

come to federal court with 'mixed' petitions run the risk of forever losing their opportunity for any federal review of their unexhausted claims." Id., at 275.  The court stated that "[i]f a petitioner files a timely but mixed petition in federal district court, and the district court dismisses it under Lundy afer the limitations period has expired, this will likely mean the termination of any federal review." Id.

The Rhines court "recognize[d] the gravity of the problem and the difficulty it [had] posed for petitioners and district courts alike." Rhines v. Weber, 544 U.S. at 275.  The court noted that "[i]n an attempt to solve the problem, some district courts have adopted a . . . 'stay-and-abeyance' procedure. . . ." Id.  "Under this procedure, rather than dismiss the mixed petition pursuant to Lundy, a district court might stay the petition and hold it in abeyance while the petitioner returns to state court to exhaust his previously unexhausted claims.  Once the petitioner exhausts his state remedies, the district court will lift the stay and allow the petitioner to proceed in federal court." Id., at 275-76.

The court generally approved of this procedure, noting that "[d]istrict courts do . . . have authority to issue stays." Rhines v. Weber, 544 U.S. at 276.  The court observed, however, that while "AEDPA does not deprive district courts of [the authority to issue stays] . . . it does circumscribe their discretion [to do so]." Id.  The court stated, therefore, that "[a]ny solution to this problem must . . . be compatible with AEDPA's purposes."  The court identified AEDPA's  "twin purposes" as "*encouraging finality*" of state convictions and "increasing a petitioner's incentive *to exhaust all his state claims **before** filing his federal petition*." (Emphasis added.) Id., at 277.  The court concluded, therefore that staying a federal habeas petition "has the potential to undermine these twin purposes." Id.

Accordingly, the <u>Rhines</u> court held that:

> [S]tay and abeyance should be available **only in limited circumstances**. Because granting a stay effectively excuses a petitioner's failure to present his claims first to the state courts, stay and abeyance is only appropriate when the district court determines **there was good cause for the petitioner's failure to exhaust his claims first in state court**. Moreover, even if a petitioner had good cause for that failure, the district court would abuse its discretion if it were to grant him a stay **when his unexhausted claims are plainly meritless**.

(Emphasis added.) <u>Rhines v. Weber</u>, 544 U.S. at 277.

### B. The Petitioner's Motion for Stay and Abeyance Should Be Denied Because He Cannot Show Good Cause for His Failure to Exhaust His Claims in State Court and the Claims Are Plainly Meritless

The petitioner's motion for stay and abeyance should be denied because he cannot meet the test for obtaining a stay under <u>Rhines</u>, <u>supra</u>. Specifically, the petitioner's motion should be denied because: (1) he cannot show good cause for his failure to exhaust his claims first in state court; and (2) his unexhausted claims are plainly meritless. <u>Id</u>., at 277.

### 1. The petitioner cannot show good cause for his failure to exhaust his claims first in state court

In his state petition for a new trial, the petitioner raised four claims that are based on the same facts as four of the unexhausted claims that he now seeks to add to his habeas petition. <u>See</u> Revised Substitute Petition for New Trial, <u>Skakel v. State</u>, Case No. CV05-4006524, Judicial District of Stamford-Norwalk (hereinafter "Petition for New Trial), Appendix C; Grounds Six, Seven, Eight and Nine, Amended Habeas Corpus Claims. In his memorandum in support of his motion for stay and abeyance, the petitioner contends that "good cause exits" for his failure to exhaust the new claims because they have been "asserted in state court" and are currently pending before the "state appellate court."

Petitioner's Memorandum of Law in Support of Motion for Stay and Abeyance [Document 46], (hereinafter "Memorandum in Support of Stay") at 3. In advancing this argument, the petitioner misconstrues the nature of the good-cause showing required to obtain stay of a habeas petition that includes unexhausted claims.

The petitioner argues, in essence, that the mere fact that he has ongoing litigation in state court on several of his claims constitutes good cause for a stay. In <u>Rhines</u>, however, the Supreme Court recognized that one of the purposes of AEDPA was to encourage federal habeas corpus petitioners "to exhaust all [their] claims in state court prior to filing [their] federal habeas petition[s]." <u>Rhines v. Weber</u>, 544 U.S. at 277. The court noted that "granting a stay effectively excuses a petitioner's failure to present his claims first to the state courts." <u>Id</u>., at 277. The court held, therefore, that "*stay and abeyance is **only** appropriate* when the district court determines *there was good cause for the petitioner's failure to exhaust his claims **first** in state court*." (Emphasis added.) <u>Id</u>.; <u>cf</u>. <u>Duncan v. Walker</u>, 533 U.S. 167, 180, 121 S.Ct. 2120, 150 L.Ed.2d 251 (2001) ("[D]iminution of statutory incentives to proceed first in state court would . . . increase the risk of the very piecemeal litigation that the exhaustion requirement is designed to reduce").

On November 5, 2007, when the petitioner filed his application for a writ of habeas corpus in this case, he had already had claims pending in state court based on the same facts as four of the claims that he now seeks to add to his petition. <u>See</u> Petition for New Trial, Appendix C; Grounds Six, Seven, Eight and Nine, Amended Habeas Corpus Claims. Thus, the petitioner was well aware of the basis for these four claims on when he initially filed his federal petition. Nevertheless, the petitioner has not even attempted to show good

cause for his failure to exhaust those claims in state court *before* filing his federal habeas petition. Thus, the petitioner has fallen far short of the required showing for a stay with respect to Grounds Six, Seven, Eight and Nine of his amended habeas corpus petition. See Rhines v. Weber, 544 U.S. at 277.

Moreover, the ongoing litigation in state court will not result in exhaustion of the federal claims that the petitioner seeks to add to his pending habeas petition in Grounds Six, Seven and Eight of his proposed amended petition. The state litigation will not result in exhaustion of these claims because the petitioner failed to clearly raise the federal grounds for relief on these claims in his brief to the Connecticut Supreme Court.

A state prisoner seeking federal habeas corpus relief must first exhaust available state remedies in order to give the state courts the opportunity to pass upon and correct alleged violations of his federal constitutional rights. Baldwin v. Reese, 541 U.S. 27, 29, 124 S.Ct. 1347, 158 L.Ed.2d 64 (2004). "The requirement for exhaustion . . . is designed to give the state courts the opportunity to address and correct violations of Constitutional rights. That purpose is fulfilled when the state court has a *fair and meaningful chance to grant relief on what is essentially the same claim raised in federal court*. (Emphasis added.) Jones v. Keane, 329 F.3d 290, 295 (2nd Cir.), cert. denied, 540 U.S. 1048, 124 S.Ct. 804, 157 L.Ed.2d 693 (2003). "If state courts are to be given the opportunity to correct alleged violations of prisoners' federal rights, *they must surely be alerted to the fact that the prisoners are asserting claims under the United States Constitution*." (Emphasis added.) Duncan v. Henry, 513 U.S. 364, 365-66, 115 S.Ct. 887, 130 L.Ed.2d (1995). State courts are not required to "consider *sua sponte*" federal claims not clearly raised by the prisoner.

<u>Gray v. Netherland</u>, 518 U.S. 152, 163, 116 S.Ct. 2074, 135 L.Ed.2d 457 (1996) "[F]or the purpose of exhausting state remedies, a claim of relief in habeas corpus must include reference to specific federal constitutional guarantee as well as a statement of the facts that entitle the petitioner to relief." <u>Id</u>., at 162-63.

In Ground Six of his amended habeas petition, the petitioner contends that the state trial court violated his constitutional rights to a fair trial and to present a defense when it denied his claim for a new trial based on newly discovered evidence of third-party culpability. Ground Six, Amended Habeas Corpus Claims at 11-20. In his appeal from the trial court's ruling, however, the petitioner makes no claim that the trial court's ruling violated the federal constitution. Indeed, in his brief to the Connecticut Supreme Court, the petitioner's challenge to the trial court's ruling is based entirely on state law. Brief of the Petitioner-Appellant, <u>Skakel v. State</u>, Supreme Court Case No. 18158 (hereinafter "Petitioner's Supreme Court Brief"), at 5-31, Appendix F. Accordingly, a decision in the petitioner's state appeal will not exhaust the federal claim that he seeks to raise in Ground Six of his amended petition. <u>See</u> <u>Gray v. Netherland</u>, 518 U.S. at 162-63.

In Ground Seven of his amended habeas petition, the petitioner contends that the state trial court violated his constitutional rights to a fair trial, to present a defense, to confront witnesses against him as well as his rights under <u>Brady v. Maryland</u> when it denied his claim for a new trial based on newly discovered evidence that Frank Garr, a state investigator, had a "book deal" relating to the case. Ground Seven, Amended Habeas Corpus Claims at 21-24. In his appeal from the trial court's ruling, however, the petitioner made no claim that the ruling violated <u>Brady</u> or any provision of the federal constitution. Instead, the petitioner merely argued that the information pertaining to the

"book deal" was newly discovered evidence that entitled him to a new trial as a matter of state law. Petitioner's Supreme Court Brief at 31-37, Appendix F.

While the petitioner did refer to information pertaining to the "book deal" as "Brady material" in the heading of the issue; Petitioner's Supreme Court Brief at 31, Appendix F; he did not mention Brady elsewhere in the section of his brief on the issue nor did he provide analysis relating the existence of a Brady violation. Petitioner's Supreme Court Brief at 31-37, Appendix F. It is well established that the petitioner's "mere mention of the federal Constitution . . . without specifying an applicable provision or an underlying legal theory, does not suffice to exhaust the federal claim." Fields v. Waddington, 401 F.3d 1018, 1021 (9th Cir. 2005). In Mallory v. Smith, 27 F.3d 991(4th Cir. 1994), the Fourth Circuit stated that "[t]he ground relied upon must be presented face-up and squarely; *the federal question must be clearly defined*. Oblique references which hint that a theory may be lurking in the woodwork will not turn the trick." (Emphasis added.) Id; see also Petrocelli v. Combe, 735 F.2d 684, 689 (2nd Cir. 1994)("Federal judges will not presume that state judges are clairvoyant"). Thus, the petitioner's isolated reference to Brady v. Maryland was not sufficient to raise a Brady claim in the state supreme court. Accordingly, a decision in the petitioner's state appeal will not exhaust the federal claim that he seeks to raise in Ground Seven of his amended petition. See Gray v. Netherland, 518 U.S. at 162-63.

In Ground Eight of his amended habeas petition, the petitioner contends that the state trial court violated his constitutional rights to a fair trial, to present a defense and to confront witnesses against him when it denied his petition for a new trial based on newly discovered evidence that contradicted the testimony of Gregory Coleman. Ground Eight, Amended Habeas Corpus Claims at 24-28. In his appeal from the trial court's ruling,

however, the petitioner again makes no claim that the trial court's ruling violated the federal constitution and, instead, relies entirely on state law in advancing his claim. Petitioner's Supreme Court Brief at 37-45, Appendix F. Accordingly, a decision in the petitioner's state appeal will not exhaust the federal claim that he seeks to raise in Ground Eight of his amended petition. See Gray v. Netherland, 518 U.S. at 162-63.

In his memorandum in support of his motion for stay, the petitioner contends that "good cause exists" for his failure to exhaust his claims because they "*have been asserted in state court*." (Emphasis added.) Memorandum in Support of Stay at 3. In fact, as demonstrated above, the federal claims that he seeks to raise in Grounds Six, Seven and Eight have not been "asserted in state court." Thus, in addition to his failure to show good cause for not exhausting his claims before filing his federal petition, he has failed to show cause as to why he has not yet even initiated a state action that would result in their exhaustion. It is clear, therefore, that the petitioner cannot make the required showing for a stay with respect to Grounds Six, Seven and Eight of his amended petition. See Rhines v. Weber, 544 U.S. at 277.

In addition to the new claims that are based on the same facts as claims raised in his state petition for a new trial, the petitioner seeks to add three claims to his federal petition that are unrelated to the claims raised in the state petition. Grounds Ten, Eleven and Twelve, Amended Habeas Corpus Claims at 36-41. The petitioner seeks to add these claims to his federal petition, but offers no explanation as to why he has not yet raised them in state court.

In Ground Eleven of his amended habeas petition, the petitioner claims that his "conviction was obtained in violation of his Sixth Amendment right to . . . effective

assistance of counsel. . . ." Ground Eleven, Amended Habeas Corpus Claims at 40. In this case, the petitioner's direct appeal was decided by the Connecticut Supreme Court on January 24, 2006. State v. Skakel, 276 Conn. at 633. Despite the fact that any ineffectiveness on the part of the petitioner's trial counsel must have been apparent to his appellate counsel, the petitioner has not yet initiated an appropriate state proceeding to obtain relief on his ineffectiveness claim. Moreover, the petitioner has not even attempted to show good cause for his failure to exhaust his claim in state court before filing his federal habeas petition. See Rhines v. Weber, 544 U.S. at 277.

Finally, in Grounds Ten and Twelve of his amended petition, the petitioner raises two Brady claims that are based on information that came to the attention of his counsel after he filed his federal habeas petition. In Ground Ten, the petitioner claims that his Brady rights were violated when the state suppressed evidence that a mentally ill individual told his brother that a high school acquaintance of his had killed Martha Moxley. Ground Ten, Amended Habeas Corpus Claims at 37-40. In his memorandum in support of his motion for bail, the petitioner states that his counsel first obtained this information in early November, 2008. Memorandum in Support of Motion for Hearing to Set Bail, dated January 8, 2009 [Document 48] (hereinafter "Memorandum in Support of Motion for Bail"), at 1. In Ground Twelve, the petitioner claims that his Brady rights were violated when the state suppressed information concerning reservations that Gregory Coleman's former lawyer had about Coleman's testimony being used in a murder prosecution. Ground Twelve, Amended Habeas Corpus Claims at 41. In his memorandum in support of his motion for bail, the petitioner states that his counsel first obtained this information on December 7, 2008. Memorandum in Support of Motion for Bail at 2.

Despite the fact that the petitioner has been in possession of this information for several months, and he filed a motion to amend his federal habeas petition by adding the new Brady claims, he has taken no action to initiate a state proceeding to obtain relief on the claims.  Moreover, the petitioner has made no effort explain the reason for his delay in pursuing state relief on the claims.  As a result, the petitioner has failed to make the required showing of good cause in order to obtain a stay with respect to the new Brady claims that he seeks to add to his petition. See Rhines v. Weber, 544 U.S. at 277.

In Rhines, the United States Supreme Court stated that "stay and abeyance is *only* appropriate when the district court determines there was good cause for the petitioner's failure to *exhaust his claims first in state court*." (Emphasis added.) Rhines v. Weber, 544 U.S. at 277.  In this case, it is clear that the petitioner cannot show good cause for his failure to do so with regard to any of his claims.

> **2.    The petitioner's motion for stay and abeyance should be denied because his unexhausted claims are plainly meritless**

In Rhines v. Weber, supra, the United States Supreme Court observed that "even if a petitioner had good cause for [his failure to exhaust his claims first in state court], the district court would abuse its discretion if it were to grant him a stay *when his unexhausted claims are plainly meritless*.  (Emphasis added.) Id., 544 U.S. at 277.  In this case, the petitioner's motion for stay and abeyance should be denied because the unexhausted claims are entirely without merit.

### a. Denial of petition for new trial on grounds of newly discovered evidence

In his petition for a new trial pursuant to General Statutes § 52-270, the petitioner claimed that he was entitled to a new trial based on newly discovered evidence. In Count One of his petition, he claimed that he was entitled to a new trial based on newly discovered evidence of third party culpability involving allegations by Gitano Bryant. In Count Two of his petition, he claimed that he was entitled to a new trial based on newly discovered evidence contradicting the testimony of Gregory Coleman, one of the state's witnesses at trial. Memorandum of Decision at 4, Appendix A. The state trial court, *Karazin, J.*, denied relief on both claims. Id., at 4, 36. The petitioner now seeks to add unexhausted claims to his federal habeas petition alleging that the state court denied his right to a fair trial, his right to present a defense and his right to confront witnesses against him when it refused to order a new trial based on this newly discovered evidence. Grounds Six and Eight, Amended Habeas Corpus Claims at 11, 24. Moreover, the petitioner seeks stay and abeyance in the case to allow him to exhaust these claims in state court.

In seeking to add these claims to his pending petition, the petitioner overlooks the fact that he is not entitled to federal habeas corpus relief for the denial of a new trial based on newly discovered evidence. Section 2254 provides that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court *only* on the ground that he is in custody in violation of the Constitution or laws . . . of the United States." (Emphasis added.) It is clear, however, that "[t]he Constitution itself . . . makes no mention of new trials." Herrera v. Collins, 506 U.S. 398, 408, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993). Thus, "*the existence merely of newly*

*discovered evidence relevant to the guilt of a state prisoner is not a ground for relief on federal habeas corpus.*" (Emphasis in original.) Id., 506 U.S. at 400, quoting Townsend v. Sain, 372 U.S. 293, 317, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963).

The Herrera court explained that "[t]his rule is grounded in the principle that federal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution – not to correct errors of fact." Herrera v. Collins, 506 U.S. at 400, quoting Moore v. Dempsey, 261 U.S. 86, 87-88, 43 S.Ct. 265, 67 L.Ed.2d 543 (1923). The court noted, therefore, that "in state criminal proceedings the trial is the paramount event for determining guilt or innocence of the defendant." Herrera, supra, 416. "Federal habeas corpus review of state convictions has traditionally been limited to claims of constitutional violations in the course of the underlying state criminal proceedings." Id. The Herrera court, therefore, held that the state court's "refusal to entertain the petitioner's newly discovered evidence eight years after his conviction [did not] transgress[] a principle of fundamental fairness 'rooted in the traditions and conscience of our people.'" Id., at 411, quoting Patterson v. New York, 432 U.S. 197, 202, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977).

Where the refusal to entertain a claim based on newly discovered evidence does not result in a constitutional violation, the petitioner here certainly cannot show a constitutional violation based on the state court's rejection of such a claim. Accordingly, the petitioner's unexhausted claims in Grounds Six and Eight are "plainly meritless." See Rhines v. Weber, 544 U.S. at 277.

### b. Claimed violations of Brady v. Maryland

In his motion for leave to amend his habeas corpus petition, the petitioner seeks to add four claims arising from alleged violations of the United States Supreme Court's ruling

in <u>Brady v. Maryland</u>, <u>supra</u>.  Specifically, the petitioner claims that his <u>Brady</u> rights were violated when the state: (1) suppressed evidence of a "book deal" involving one of the investigators in the case; (2) engaged in a "pattern of nondisclosure of exculpatory evidence" and suppressed "profile reports" and "time lapse data"; (3) suppressed "exculpatory evidence that pointed to a third party as the killer. . ."; and (4) suppressed of impeachment evidence pertaining to one of the state's witnesses at trial. Grounds Seven, Nine, Ten and Twelve, Amended Habeas Corpus Claims at 21-24, 28-41.

In <u>Strickler v. Greene</u>, 527 U.S. 263, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999), the United States Supreme Court stated that "[t]here are three components of a true <u>Brady</u> violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." <u>Id</u>., 527 U.S. at 281-82.  When the unexhausted claims that the petitioner seeks to add to his petition are considered, it is clear he cannot establish a <u>Brady</u> violation with respect to any of them.

**Ground Seven:**  The petitioner claims that he was denied his right to a fair trial, to present a defense and to confront witnesses against him when the trial court denied his petition for a new trial and prevented him for presenting newly discovered evidence of a "book deal" involving Frank Garr, an investigator in the case, and Leonard Levitt, a freelance writer.  In addition, the petitioner claims that evidence pertaining to the book deal had been suppressed by the state, in violation of <u>Brady v. Maryland</u>. Ground Seven, Amended Habeas Corpus Claims at 21.  As demonstrated in Section II.B.1.a.(1), <u>supra</u>, the petitioner is not entitled to federal habeas corpus relief for a claim arising from the denial of a new trial based on newly discovered evidence. <u>See</u> <u>Herrera v. Collins</u>, 506 U.S.

at 400, <u>Townsend v. Sain</u>, 372 U.S. at 317.  The petitioner's claim for federal habeas corpus relief, therefore, depends entirely on the alleged <u>Brady</u> violation.  When the facts pertaining to the petitioner's claim are considered, however, it is clear that he cannot establish any of the components of a <u>Brady</u> violation.

After an evidentiary hearing on the petitioner's petition for a new trial, the state trial court found that there was no evidence that "at the time of trial, Garr had any expectation of financial gain from a book that his friend Levitt might one day write." Memorandum of Decision at 19, Appendix A.[2]  Thus, the "book deal" that is the basis of the petitioner's claim simply did not exist.  Moreover, Attorney Michael Sherman, the petitioner's trial counsel, testified that "prior to trial, he had 'pretty good information' from three persons – Tim Dumas, Mark Fuhrman, and Dominick Dunne, all of whom had written books about the case – that Garr had a 'book deal.'" <u>Id</u>., at 17.  Indeed, Sherman specifically asked Garr about a "book deal" when he cross-examined him during a motion hearing.  Transcript of May 10, 2002, <u>State v. Skakel</u>, Case No. CR00-135792-T, Judicial District of Stamford-Norwalk (hereinafter "Transcript, 5/10/02") at 156, Appendix B.  Thus, the petitioner's counsel was clearly aware of "essential facts permitting him to take advantage of any exculpatory evidence." <u>United States v. LeRoy</u>, 687 F.2d 610, 618 (2d Cir. 1982), <u>cert</u>. <u>denied</u>, 459 U.S. 1174, 103 S.Ct. 823, 74 L.Ed.2d 1019 (1983).  Accordingly, the petitioner cannot show that the evidence pertaining to the alleged "book deal" was suppressed within

---

[2]  Section 2254(e)(1) provides that "a determination of a factual issue made by a State court shall be presumed correct."  The petitioner "*shall have the burden of rebutting the presumption of correctness by clear and convincing evidence*." (Emphasis added.) <u>Id</u>.

the meaning of <u>Brady</u>. <u>See</u> <u>United States v. Payne</u>, 63 F.2d 1200, 1208 (2nd Cir. 1995), <u>cert</u>. <u>denied</u>, 516 U.S. 1165, 116 S.Ct. 1056, 134 L.Ed.2d 201 (1996).

Nor can the petitioner show that he was prejudiced in any way by the state's alleged failure to disclose information pertaining to the "book deal." The petitioner claims that the evidence of the book deal "undermines the credibility of the of the case's lead investigator, and of the prosecution as a whole." Ground Seven, Amended Habeas Corpus Claims at 23. The petitioner further contends that "the jury would be entitled to find the lead investigator in the case was either less than wholly candid or less than fully informed." <u>Id</u>. In asserting this argument, however, the petitioner overlooks the fact that Garr never testified before the jury. Garr's only testimony in the case was outside the presence of the jury during a hearing on a motion in limine filed by the state. Transcript of May 9, 2002, <u>State v. Skakel</u>, Case No. CR00-135792-T, Judicial District of Stamford-Norwalk at 181-83, Appendix B; T. 5/10/02 at 131-56, Appendix B. The petitioner, therefore, cannot show that Garr's alleged bias had any effect on the evidence presented to the jury or on the jury's verdict. Thus, the petitioner can show neither that the evidence regarding the "book deal" was favorable to him nor that it was material within the meaning of <u>Brady</u>. <u>See</u> <u>Strickler v. Greene</u>, 527 U.S. at 281-82.

**Ground Nine:** The petitioner claims that his right to a fair trial, right to present a defense and his rights under <u>Brady v. Maryland</u>, were violated when the trial court denied his motion for a new trial based on "the State's pattern of nondisclosure of exculpatory evidence and suppression of profile reports and the time lapse data." Ground Nine, Amended Habeas Corpus Claims at 28-36. The petitioner claims a "pattern of nondisclosure" based on the state's alleged failure to disclose: (1) a composite sketch of

Kenneth Littleton; (2) two "profile reports" prepared by state investigators pertaining to two other suspects in the murder, Littleton and the petitioner's brother, Thomas Skakel; and (3) a "Time Lapse Data" document that contained information regarding a possible connection between Littleton and several unsolved murders of young women. Id., at 28-29. Thus, in effect, the petitioner claims that he was prejudiced by the collective effect of the state's suppression of these items under United States v. Bagley, 473 U.S. 667, 675, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985) and Kyles v. Whitley, 514 U.S. 419, 436-37, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995).[3] The petitioner's claim lacks merit because he cannot show that the state suppressed any of these items or that they were material to his defense.

The petitioner claims that the state failed to disclose a composite sketch of a person seen near the crime scene on the night of the murder that he contends bears a resemblance to Kenneth Littleton. Ground Nine, Amended Habeas Corpus Claims at 28. On direct appeal, the Connecticut Supreme Court rejected this claim, upholding the trial court's ruling that the petitioner and his trial counsel were on notice of the existence of the composite sketch through the investigative reports disclosed to the them by the state. State v. Skakel, 276 Conn. 633, 702-703, 888 A.2d 985, cert. denied, 549 U.S. 1030, 127 S.Ct. 578, 166 L.Ed.2d 428 (2006). When the petitioner reasserted the claim in his petition for a new trial, the state trial court also rejected it. The trial court concluded that "[b]ecause petitioner knew of the sketch before trial, it cannot be considered 'suppressed' or part of a 'pattern of nondisclosure.'" Memorandum of Decision at 23, Appendix A.

---

[3] The petitioner cites no authority for the proposition that a "pattern of nondisclosure of exculpatory evidence" by the state that does not amount to a Brady violation would result in a denial of due process. The petitioner's claim, therefore, necessarily rests upon Brady and its progeny.

The petitioner also contends that the state failed to disclose profile reports pertaining to Littleton and Thomas Skakel that were prepared by John Solomon, a former investigator for the state's attorney's office. Ground Nine, Amended Habeas Corpus Claims at 28. The petitioner first raised a Brady claim regarding the profile reports in his amended motion for a new trial. The trial court denied the petitioner's motion as untimely. State v. Skakel, 276 Conn. at 709. On direct appeal, the Connecticut Supreme Court observed that although the petitioner became aware of the reports during trial, he did not raise a Brady challenge to the state's failure to produce them until two and a half months after the limitation period of Practice Book § 42-54 had expired.[4] Accordingly, the state supreme court concluded that the trial court had not abused its discretion when it rejected the petitioner's claim as time barred. Skakel, supra, 710-11.

The petitioner reasserted his claim regarding the profile reports in his petition for a new trial. In ruling on the petitioner's claim, the trial court noted that Michael Sherman, the petitioner's trial counsel, testified that he had spoken to John Solomon extensively prior to trial and that Solomon told him about the reports. Memorandum of Decision at 12, Appendix A. In addition, the court noted that the criminal trial record indicated that the petitioner became aware of the reports during trial. Id. Accordingly, the court rejected the petitioner's claim "[b]ecause this evidence was known to the petitioner at trial, and the petitioner failed to pursue a copy of the reports with due diligence. . . ." Id., at 12-13.

Finally, the petitioner contends that the state failed to disclose a "Time Lapse Data" document that was also prepared by John Solomon. Ground Nine, Amended Habeas

_____

[4] Practice Book § 42-54 requires that motions for new trial be filed within five days after the verdict.

Corpus Claims at 28-29. The document contained information regarding a possible connection between Kenneth Littleton and several unsolved murders of young women. Id., at 29. The petitioner made no claim regarding the state's alleged suppression of the time-lapse data on direct appeal or in his petition for a new trial. See State v. Skakel, supra; Petition for New Trial, Appendix C. The petitioner, nevertheless, seeks to add the time-lapse data claim to his federal habeas petition.

The petitioner cannot prevail on his claim because the record makes clear that the time-lapse data was not suppressed. At the hearing on the petitioners motion for a new trial, Michael Sherman, the petitioner's trial counsel, testified that documents provided to him by the state in pretrial discovery put him on notice that during the investigation of the murder of Martha Moxley, state investigators had considered the possibility that Littleton was a serial murderer. Transcript of April 19, 2007, Skakel v. State, Case No. CR05-4006524-S, Judicial District of Stamford-Norwalk at 227-30, Appendix D. Sherman acknowledged that information pertaining to a number of murder victims mentioned in the time-lapse data was also included in the pretrial discovery provided to him by the state. Transcript of April 20, 2007, Skakel v. State, Case No. CR05-4006524-S, Judicial District of Stamford-Norwalk (hereinafter T. 4/20/07) at 6-11, Appendix D. Moreover, Sherman acknowledged that documents provided to him by the state in pretrial discovery specifically mentioned that state investigators were compiling "chronological time-lapse data on Kenneth Littleton. . . ." T. 4/20/07 at 12, Appendix D. Finally, Sherman testified that prior to trial, he spoke with Solomon "at length about a great . . . number of crimes which he believed Ken Littleton may have been responsible for." T. 4/20/07 at 13-14, Appendix D. Thus, the record shows that petitioner's counsel was aware of "essential facts permitting

21

him to take advantage of any exculpatory evidence [included in the time lapse data]." United States v. LeRoy, 687 F.2d at 618.[5]

In any event, the petitioner cannot show that he was prejudiced by the alleged nondisclosure of the evidence in question. The evidence that the petitioner complains was not disclosed to him in Ground Nine could have had relevance only to potential third-party culpability defenses that he might have raised at trial. Under Connecticut law, however, evidence of third-party culpability is admissible at trial only where the defendant can "directly connect the defendant to the crime. . . ." State v. West, 274 Conn. 605, 625, 877 A.2d 787, cert. denied, 546 U.S. 1049, 126 S.Ct. 775, 163 L.Ed.2d 201 (2005), quoting State v. Cerreta, 260 Conn. 251, 262-63, 796 A.2d 1176 (2002). "It is not enough to show that another had motive to commit the crime ... nor is it enough to raise a bare suspicion that some other person may have committed the crime of which the defendant is accused." Id. Here, the allegedly suppressed evidence does no more than raise a "bare suspicion" that someone else may have committed the crime. The petitioner has offered nothing to show that either Kenneth Littleton or Thomas Skakel can be directly connected to the murder of Martha Moxley. In the absence of such a showing, the allegedly suppressed

---

[5]   While the petitioner does not specifically make its nondisclosure part of his claim, he complains that the state did not provide him with a copy of the arrest warrant for Thomas Skakel charging him with the murder of Martha Moxley until the fifth day of trial. Ground Nine, Amended Habeas Corpus Claims at 31. It is well established, however, that late disclosure of Brady material is not a *per se* constitutional violation. See, e.g., United States v. Walters, 351 F.3d 159, 169 (5th. Cir. 2003); United States v. Sepulveda, 15 F.3d 1161, 1178 (1st Cir. 1993). In the absence of a showing that the late disclosure prejudiced the defense, there is no constitutional violation. Walters, supra; Sepulveda, supra; United States v. Munoz Franco, 113 F.Supp.2d 224, 227 n.5 (D.P.R. 2000). Moreover, where the record fails to show that the petitioner sought a continuance, or otherwise attempted to make use of the belatedly disclosed information, he cannot later claim a Brady violation based on its late disclosure. Id.; United States v. Sepulveda, 15 F.3d at 1178.

evidence would not have been admissible at trial. See State v. West, supra. Because the petitioner has offered nothing to show that the evidence would have been admissible and, therefore, useful to him, he cannot not show that it was material within the meaning of Brady. See United States v. Bagley, 473 U.S. at 678; Kyles v. Whitley 514 U.S. at 433-34.

**Ground Ten:** The petitioner claims that his conviction was obtained in violation of his right to a fair trial, right to present a defense and his rights under Brady v. Maryland, because the state suppressed "exculpatory evidence that pointed to a third party as the killer of Martha Moxley." Ground Ten, Amended Habeas Corpus Claims at 36-37. The petitioner's claim is meritless because he cannot remotely approach showing the allegedly suppressed evidence was material to his defense.

The "exculpatory evidence" that the petitioner claims the state suppressed was a letter from a woman named Julia Wilson to James Cameron, the chief of police in Madison, Connecticut. Wilson's letter was dated July 19, 1993. Wilson sent a copy of the letter to the chief of police in Greenwich. In the letter, Wilson informed Chief Cameron that her brother, Andrew Wilson, who resided in Madison, was "seriously mentally ill" and had been having "paranoid delusions." Ground Ten, Amended Habeas Corpus Claims at 37. The letter detailed Andrew's long history of drug and alcohol abuse and the treatment that he had been receiving for his mental illness. Id., at 37-39.

The letter also described threats that Andrew Wilson had made toward Dirk Peters and his father, Jack Peters. Andrew, who attended high school with Dirk in Greenwich, Connecticut, claimed that Dirk had drugged him and brainwashed him in 1981. Andrew referred to Dirk as "the destroyer" and attributed all of his misfortunes to the actions of Dirk. Andrew claimed that Dirk's father, Jack Peters, was an accessory to Dirk in these activities.

Ground Ten, Amended Habeas Corpus Claims at 37-38.  The letter further stated that on June 30, 1993, Andrew had a conversation with his brother, Ted, during which Andrew claimed that Dirk Peters had murdered Martha Moxley. Id., at 39.

On August 5, 1993, two and a half weeks after Julia Wilson wrote to Chief Cameron, the Greenwich police contacted the Madison police to inform them that Andrew Wilson had been arrested and charged with the murder of Jack Peters in Greenwich. Ground Ten, Amended Habeas Corpus Claims at 40.  Because Andrew Wilson was approximately the same age as the petitioner and Martha Moxley, and because he lived in Greenwich at the time of Moxley's murder; Id., at 37-38; the petitioner now claims that the state violated his rights under Brady v. Maryland when it failed to disclose the information included in Julia Wilson's letter to the petitioner's counsel prior to trial. Id., at 40.  In support of his claim, the petitioner contended that it was equally likely that Dirk Peters or Andrew Wilson was the perpetrator of Martha Moxley's murder.  The petitioner claims, therefore, that the information was "vital to [his] defenses of third party culpability and alibi." Id.

The petitioner's claim lacks merit because he cannot establish the materiality of the allegedly suppressed evidence.  The only evidence connecting Dirk Peters to the murder of Martha Moxley is the uncorroborated statement of Andrew Wilson, a mentally ill and delusional individual.  Despite the petitioner's claims to the contrary, there is absolutely no evidence to connect Andrew Wilson to Moxley's murder.  The information included in Julia Wilson's letter, therefore, would not have been admissible to establish a defense of third party culpability or, indeed, for any other reason. See State v. West, 274 Conn. at 625-26; State v. Saunders, 267 Conn. 363, 383, 838 A.2d 186, cert. denied, 541 U.S. 1036, 124 S.Ct. 2113, 158 L.Ed.2d 722 (2004) ("Evidence is irrelevant . . . if there is such a want of

open and visible connection between the evidentiary and principle facts that . . . the former is not worthy or safe to be admitted in the proof of the latter"). Accordingly, the petitioner cannot establish that the information contained in Julia Wilson's letter was material within the meaning of Brady. See Bagley, 473 U.S. at 678; Kyles, 514 U.S. at 433-34.

**Ground Twelve:** The petitioner claims that his conviction was obtained in violation of his right to a fair trial, his right to confront witnesses and his rights under Brady v. Maryland because the state suppressed "highly valuable impeachment evidence" regarding the state's "star witness," Gregory Coleman. Ground Twelve, Amended Habeas Corpus Claims at 41. The petitioner's claim lacks merit because he cannot establish any of the components of a Brady violation regarding the alleged suppression of the impeachment evidence.

The petitioner apparently contends that in 1998, John M. Regan, a New York lawyer who had previously represented Coleman, provided the state with impeachment evidence pertaining to his former client. Ground Twelve, Amended Habeas Corpus Claims at 41. Ground Twelve of the amended petition, however, does not allege that Regan provided the state with any impeachment evidence relating to Coleman. Rather, Ground Twelve merely states that Regan told an individual who identified himself as a Connecticut prosecutor that "he hoped the that the prosecutor was not serious about using Coleman's testimony to accuse someone of murder." Id., at 41. Regan's expression of hope with regard to the prosecutor's intentions does not constitute impeachment evidence or, indeed, evidence of any kind. Thus, the petitioner's claim fails to allege that the state suppressed evidence or that any such evidence was favorable to him. See Strickler v. Greene, 527 U.S. at 281-82.

But even if the petitioner had alleged that the state suppressed impeachment evidence relating to Coleman, the petitioner could not show that any such evidence was material.  In United States v. Bagley, supra, the court stated that "suppression of evidence amounts to a constitutional violation *only* if it deprives the defendant of a fair trial. Consistent with "[the court's] overriding concern with the justice of the finding of guilt," United States v. Agurs, [427 U.S. 97, 112, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976)], a constitutional violation occurs, and the conviction must be reversed, *only* if the evidence is material in the sense that its suppression undermines confidence in the outcome of the trial." (Emphasis added.) Bagley, 473 U.S. at 678.  Thus, "evidence is material, and constitutional error results from its suppression . . . 'if there is a *reasonable probability* that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" (Emphasis added.) Id., at 682; accord, Kyles v. Whitley, 514 U.S. at 433-34.  Here, the petitioner cannot meet this standard because the jury was well aware of Coleman's personal problems that were the basis of Regan's opinion regarding his credibility and because Coleman's testimony was corroborated by two reliable witnesses.

Because Coleman died before he could testify at trial, a transcript of his testimony at the probable cause hearing was admitted into evidence and read to the jury. Transcript of May 16, 2002, State v. Skakel, Case No. CR00-135792-T, Judicial District of Stamford-Norwalk at 51-54, Appendix E.  The transcript included the extensive cross-examination of Coleman by the petitioner's counsel. Transcript of April 18, 2001, State v. Skakel, Case No. CR00-135792-T, Judicial District of Stamford-Norwalk (hereinafter "T. 4/18/01") at 98-131, Appendix E; Transcript of April 19, 2001, State v. Skakel, Case No. CR00-135792-T, Judicial District of Stamford-Norwalk (hereinafter "T. 4/19/01") at 2-120, Appendix E.

During his cross-examination of Coleman, the petitioner's trial counsel, Attorney Michael Sherman, questioned Coleman aggressively on a number of matters relating to his credibility. Sherman confronted Coleman with his prior acts of misconduct and alleged inconsistent statements. T. 4/18/01 at 98-108, 110-14, 119, 121-27; T. 4/19/01 at 8-11, 24-26, 40-45, 57-80, 117-19, Appendix E. Sherman challenged Coleman's memory due to the passage of time and questioned him regarding any expectation of personal benefit that he might have had in exchange for his testimony. T. 4/18/01 at 109, 111; T. 4/19/01 at 4-5, 55-56, 80-85, 114, 116-17, Appendix E. Sherman questioned Coleman as to why he had not reported his conversation with the petitioner to the authorities sooner. T. 4/19/01 at 32-33, 50-54, 86-90, 112, Appendix E. Finally, Sherman questioned Coleman about his drug use and the effect that his use of drugs had on his memory. T. 4/18/01 at 115, 128-29; T. 4/19/01 at 2-7, 55, 110-13, 119-20, Appendix E.

Moreover, the jury heard testimony from two witnesses corroborating Coleman's testimony that the petitioner had confessed to the murder. Gregory Coleman's widow, Elizabeth Coleman, testified that her husband told her about the petitioner's confession in 1986. Transcript of May 20, 2002, State v. Skakel, Case No. CR00-135792-T, Judicial District of Stamford-Norwalk (hereinafter "T. 5/20/02") at 88-93, Appendix E. Jennifer Pease testified that Coleman told her about the petitioner's confession in 1979 while they were both still students at the Elan School. Transcript of May 29, 2002, State v. Skakel, Case No. CR00-135792-T, Judicial District of Stamford-Norwalk at 99-101, 108, Appendix E. In addition, the trial court admitted statements made by Coleman during the transfer hearing in juvenile court and during his grand jury testimony as prior consistent statements. T. 5/20/02 at 72-79, 82-84, Appendix E; see State v. Hines 243 Conn. 796, 804, 709 A.2d

522 (1998) (prior consistent statements admissible to rehabilitate witness from impeachment by claims of recent fabrication or faulty memory).

When these facts are considered, it is clear that the petitioner cannot show "a reasonable probability" that the result of his trial would have been different if Attorney Regan's opinion regarding Coleman's credibility had been disclosed to the defense. See United States v. Bagley, 473 U.S. at 682; Kyles v. Whitley, 514 U.S. at 433-434. Accordingly, the petitioner cannot show that Regan's opinion regarding Coleman's credibility was material within the meaning of Brady.

Accordingly, the claims that the petitioner seeks to raise under Brady v. Maryland are "plainly meritless." See Rhines, 544 U.S. at 277.

### c.    Claimed ineffective assistance of counsel

In Ground Eleven of his amended petition, the petitioner claims that his conviction was obtained in violation of his right to effective assistance of counsel and a fair trial "due to the actions and conduct of [his] trial counsel." Ground Eleven, Amended Habeas Corpus Claims at 40. In order to prevail on this claim, the petitioner must show that his "counsel's performance 'fell below an objective standard of reasonableness' and that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" Cox v. Donelly, 387 F.3d 193, 197 (2nd Cir 2004), quoting Strickland v. Washington, 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The petitioner, however, has failed to cite any act or omission on the part of his counsel that would constitute ineffective assistance. Because the petitioner has not even attempted to state a factual basis for his ineffective assistance claim, the claim must be deemed to be meritless. See Cox v. Donnelly, supra, 197.

In this case, each of the claims that the petitioner seeks to add to his federal habeas corpus petition is "plainly meritless." Rhines v. Weber, 544 U.S. at 277.  Accordingly, the petitioner's request for stay and abeyance to permit him to exhaust these claims in state court should be denied. See id.

III.    CONCLUSION

For all of the forgoing reasons, the petitioner's motion for stay and abeyance of the proceedings on his petition for a writ of habeas corpus should be denied.

Respectfully submitted,

PETER J. MURPHY, WARDEN
MacDOUGALL-WALKER CORRECTIONAL
        INSTITUTION
DEPARTMENT OF CORRECTION
STATE OF CONNECTICUT

RESPONDENT

By:  ___/s/ Michael E. O'Hare_____
MICHAEL E. O'HARE
Supervisory Assistant State's Attorney
Office of the Chief State's Attorney
300 Corporate Place
Rocky Hill, Connecticut 06067-1829
Telephone: (860) 258-5887
Facsimile: (860) 258-5968
E-mail: michael.ohare@po.state.ct.us
Federal Bar No. ct 05318

SUSANN E. GILL
Senior Assistant State's Attorney
Office of the State's Attorney
Judicial District of Fairfield
1061 Main Street
Bridgeport, Connecticut 06604
Telephone: (860) 579-6506
Facsimile: (860) 382-8401
E-mail: susann.gill@po.state.ct.us
Fed. Bar No. ct 05415

**CERTIFICATION**

I hereby certify that a copy of the foregoing document was mailed, first class postage prepaid, to counsel for the petitioner: Attorney Hope C. Seeley, Attorney Hubert J. Santos and Attorney Sandra L. Snaden, Santos and Seeley, P.C., 51 Russ Street, Hartford, Connecticut, 06106, Tel. No. (860) 249-6548, Fax No. (860) 724-5533, on March 12, 2009.

       /s/   Michael E. O'Hare
MICHAEL E. O'HARE
Supervisory Assistant State's Attorney