**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| MICHAEL C. SKAKEL, | : | |
| Petitioner, | : | Case No. 3:07 CV 1625 (PCD) |
| | | |
| v. | : | |
| | | |
| PETER J. MURPHY, | : | MARCH 19, 2009 |
| Respondent. | : | |

**RESPONDENT'S MEMORANDUM IN OPPOSITION**
**TO PETITIONER'S MOTION FOR HEARING TO SET BAIL**

The respondent hereby objects to the petitioner's motion for a hearing to set bail and to set bail pending consideration of his petition for a writ of habeas corpus. The petitioner's request for bail should be denied because he can demonstrate neither that he has a substantial constitutional claim with a strong likelihood of success nor the existence of special circumstances that would justify bail in this case.

## I.    PROCEDURAL HISTORY

After trial by jury in the Superior Court for the Judicial District of Stamford-Norwalk, the petitioner was convicted murder, in violation of General Statutes § 53a-54a. On August 29, 2002, the trial court, *Kavanewsky, J.*, sentenced the petitioner to imprisonment for a term of twenty years to life.   The petitioner appealed to the Connecticut Supreme Court, which affirmed his conviction on January 24, 2006. State v. Skakel, 276 Conn. 633, 888 A.2d 985 (2006). The petitioner filed a petition for *certiorari* to the United States Supreme Court which was denied on November 13, 2006. Skakel v. Connecticut, 549 U.S. 1030, 127 S.Ct. 578, 166 L.Ed.2d 428 (2006).

On August 25, 2005, the petitioner filed a petition for a new trial pursuant to General Statutes § 52-270 in the Superior Court for the Judicial District of Stamford-Norwalk. The

Dockets.Justia.com

trial court, *Karazin, J.*, denied the petition on October 25, 2007. Memorandum of Decision, Skakel v. State, CV05-0006524-S, Judicial District of Stamford-Norwalk, Appendix A. The petitioner appealed and the case is currently pending before the Connecticut Supreme Court. See Skakel v. State, Connecticut Supreme Court Docket No. 18158.

On November 5, 2007, the petitioner filed his application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The respondent filed his answer to the allegations in the petitioner's habeas corpus petition on December 21, 2008. On March 5, 2008, this court ordered the petitioner and the respondent to file cross-motions for summary judgment. The parties filed their cross-motions for summary judgment on October 27, 2008. On January 7, 2009, the petitioner filed his response to the motion for summary judgment filed by the respondent. On January 15, 2009, the respondent filed his response to the motion for summary judgment filed by the petitioner.

On January 8, 2009, the petitioner filed a motion for leave to amend his habeas petition, a motion for stay and abeyance and a motion for a hearing to set bail. Motion for Leave to Amend Petition for a Writ of Habeas Corpus, dated January 8, 2009 [Document 43] (hereinafter "Motion to Amend Petition"); Petitioner's Motion for Stay and Abeyance, dated January 8, 2009 [Document45]; and Motion for Hearing to Set Bail, dated January 8, 2009 (hereinafter "Motion for Bail") [Document 47].

## II.   ARGUMENT

The petitioner claims that he is entitled to release on bail because his "federal habeas corpus petition represents both the extraordinary circumstances and the high probability of success which supports the unusual remedy [of setting] bail during the pendency of [habeas corpus] litigation." Motion for Bail at 2. When the petitioner's request

2

is considered in light of the facts of this case, it is clear that he falls far short of meeting the requirements for release on bail during a federal habeas proceeding.

### A.    Standard for Obtaining Release on Bail During the Pendency of Federal Habeas Corpus Litigation

In Ostrer v. United States, 584 F.2d 594 (2nd Cir. 1978), the Second Circuit stated that "[a] district court has inherent power to enter an order affecting the custody of a habeas corpus petitioner who is properly before it contesting the legality of his custody." Id., at 596 n.1. But even as the Second Circuit "acknowledged the authority of the federal courts to grant bail to habeas petitioners, [the court] also . . . emphasized that the power is a limited one, to be exercised in special cases only." Mapp v. Reno, 241 F.3d 221, 226 (2nd Cir. 2001). In Rado v. Meachum, 699 F. Supp. 25 (D. Conn. 1988), this court noted that "principles of comity and federalism counsel that this power be exercised sparingly." Id., at 26. The court explained the need for restraint on the part of the federal courts in granting bail in §2254 cases, as follows:

> The state has a significant interest in bringing some degree of finality to its criminal prosecutions and the judgments of its courts after conviction. Thus, the federal court should tread lightly before interfering with the state's substantial interest in executing its judgment.

(Citations omitted.) Rado v. Meachum, supra, 26. Accordingly, "a habeas petitioner should be granted bail only in unusual cases, or when extraordinary or exceptional circumstances exist. . . ." Ostrer v. United States, supra, 596 n.1.

For these reasons, "[t]he standard for bail pending habeas litigation is a difficult one to meet. . . ." Mapp v. Reno, supra, 226, quoting Grune v. Coughlin, 913 F.2d 41, 44 (2nd Cir. 1990). "Bail should be granted . . . pending post-conviction habeas corpus review only when the petitioner has raised substantial constitutional claims *upon which he has a high*

*probability of success*, and also when extraordinary or exceptional circumstances exist *which make the grant of bail necessary to make the habeas remedy effective*." (Emphasis added.) Calley v. Callaway, 496 F.2d 701, 702 (5th Cir. 1974) citing Aronson v. May, 85 S.Ct. 3, 13 L.Ed.2d 6 (1964) (*Douglas, J.*, on bail application); accord, Mapp v. Reno, supra, 226; Rado v. Meachum, supra, 26-27.[1]

In this case, the petitioner can show neither that he has raised a substantial constitutional claim "upon which he has a high probability of success . . ." nor the existence of extraordinary or exceptional circumstances "which make the grant of bail necessary to make the habeas remedy effective." Calley v. Callaway, supra.

### B. The Petitioner Has Not Presented this Court with a Substantial Constitutional Claim That Has a High Probability of Success

In this case, the petitioner seeks relief pursuant to 28 U.S.C. § 2254 on a total of twelve claims. The petitioner is pursuing five of the claims set forth in his original petition for a writ of habeas corpus. Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C.

---

[1] In Aronson, Justice Douglas opined as follows:

This applicant is incarcerated because he has been tried, convicted, and sentenced by a court of law. He now attacks his conviction in a collateral proceeding. It is obvious that a greater showing of special reasons for admission to bail pending review should be required in this kind of case than would be required in a case where applicant had sought to attack by writ of habeas corpus an incarceration not resulting from a judicial determination of guilt. . . . In this kind of case it is therefore necessary to inquire whether, in addition to there being substantial questions presented by the appeal, there is some circumstance making this application exceptional and deserving of special treatment in the interests of justice....

(Citations omitted.) Aronson v. May, supra, 5. This portion of Justice Douglas's opinion has been quoted repeatedly. See e.g. Landano v. Rafferty, 970 F.2d 1230, 1238-39 (3d Cir. 1992); Ostrer, 584 F.2d at 599, Glynn v. Donnelly, 470 F.2d 95, 87-98 (1st Cir. 1972).

4

§2254 by a Person in State Custody (hereinafter "Habeas Corpus Petition") [Document 1], paragraph 19.[2]   In addition, the petitioner seeks to add seven more claims set forth the amended petition that he seeks to file in this case. Motion to Amend Petition; Additional Pages – Petition for Writ of Habeas Corpus, <u>Michael C. Skakel v. Peter J. Murphy</u> [Document 43-3] (hereinafter "Amended Habeas Corpus Claims") at 11-41.   The petitioner's motion for bail should be denied because he has not presented this court with a substantial constitutional claim that has a high probability of success. <u>See</u> <u>Mapp v. Reno</u>, 241 F.3d at 226; <u>Calley v. Callaway</u>, 496 F.2d at 702.

### 1.   The petitioner cannot show a high probability of success with regard to the claims raised in his original petition

In advancing his claim for bail, the petitioner asserts that his memorandum in support of his motion for summary judgment "has fully articulated the substantial nature of the constitutional issues contained in his first five claims of error." Memorandum in Support of Motion for Hearing to Set Bail, dated January 8, 2009 [Document 48] (hereinafter "Memorandum in Support of Motion for Bail") at 8; <u>see</u> Petitioner's Memorandum of Law in Support of Motion for Summary Judgment, dated October 27, 2008 [Document 33] at 23-127.   The petitioner contends that "the fact that [he] has already fully addressed the substantial nature of his claims should work in his favor [in his effort to have bail set]." Memorandum in Support of Motion for Bail at 9.   In advancing this argument, however, the

---

[2]  The petitioner's habeas corpus petition originally included six claims; Habeas Corpus Petition, paragraph 19; but the petitioner abandoned the claim set forth as Ground Five, paragraph 19, of the habeas petition in his motion for summary judgment. <u>See</u> Petitioner's Memorandum of Law in Support of Motion for Summary Judgment, dated October 27, 2008 [Document 33] at 23-126; Objection to Petitioner's Motion for Summary Judgment and Reply to Petitioner's Memorandum in Support Thereof, dated January 15, 2009 [Document 50] at 2.

petitioner overlooks the fact that the respondent has already fully responded to his first five claims and has demonstrated that each claim lacks merit. See Respondent's Motion for Summary Judgment, dated October 27, 2008 [Document 34]; Memorandum in Support of Respondent's Motion for Summary Judgment, dated October 27, 2008 [Document 34-2]; and Objection to Petitioner's Motion for Summary Judgment and Reply to Memorandum in Support Thereof, dated January 15, 2009 [Document 50] (hereinafter "Objection to Petitioner's Motion for Summary Judgment").

### a.     The petitioner's statute of limitations claim

In the habeas corpus petition originally filed in this case, the petitioner first claims that his right to due process was violated when the state supreme court overruled its own precedent to hold that his prosecution was not barred by the statute of limitations. Habeas Corpus Petition, paragraph 19, Ground One.   The petitioner's claim fails for several reasons.  First, the petitioner is not entitled to federal  review of his claim because the trial court's ruling permitting his prosecution was based on state law and the did not implicate his rights under the federal constitution.  Second, the petitioner cannot obtain relief on his federal claim because it was not properly raised in the Connecticut Supreme Court and is, therefore, unexhausted.  Finally, if considered on the merits, the petitioner's claim fails because it is not based upon "clearly established federal law" and because the Connecticut Supreme Court's ruling was neither "contrary to" nor "an unreasonable application of" the controlling precedent of the United States Supreme Court. Memorandum in Support of Respondent's Motion for Summary at 6-23; Objection to Petitioner's Motion for Summary Judgment at 4-11.

### b.    The petitioner's claims under <u>Brady v. Maryland</u>

The petitioner next claims that his right to a fair trial was violated when the state suppressed allegedly exculpatory evidence in violation of the United States Supreme Court's decision in <u>Brady v. Maryland</u>, <u>supra</u>. Habeas Corpus Petition, paragraph 19, Ground Two.  Specifically, the petitioner claims that the state violated his rights under <u>Brady</u> when it failed to disclose a composite sketch and two "profile reports" prepared by an investigator. <u>Id</u>.  The petitioner is not entitled to federal habeas corpus relief with respect to either claim.  The petitioner's claim regarding the composite sketch fails because the Connecticut Supreme Court reasonably applied clearly established federal law when it held that the sketch was not suppressed within the meaning of <u>Brady</u>.  Memorandum in Support of Respondent's Motion for Summary at 28-31; Objection to Petitioner's Motion for Summary Judgment at 11-17. The petitioner's claim regarding the profile reports fails because the petitioner's claim was defaulted in the Connecticut Supreme Court on adequate an independent state grounds and because the petitioner cannot show that the reports were suppressed. Memorandum in Support of Respondent's Motion for Summary at 31-38; Objection to Petitioner's Motion for Summary Judgment at 17-19.

### c.    The petitioner's claim regarding his transfer from juvenile court to the adult criminal court

The petitioner claims that he was deprived of his right to due process of law when the state supreme court upheld the juvenile court's ruling  transferring his case to the adult criminal docket of the Superior Court. Habeas Corpus Petition, paragraph 19, Ground Three.  Specifically, the petitioner claims that he was denied due process "when the Connecticut Supreme Court permitted a state regulation to abrogate [his] statutory rights

under Connecticut General Statutes Sections 17-60a and 17-66." Id. The petitioner is barred from obtaining relief on his claim because it was not properly raised in state court and is, therefore, unexhausted. If considered on the merits, the petitioner's claim should be rejected because it is based entirely on state law and is not cognizable in a federal habeas corpus proceeding. Memorandum in Support of Respondent's Motion for Summary at 38-44; Objection to Petitioner's Motion for Summary Judgment at 19-24.

### d. The petitioner's claims regarding the prosecutor's alleged misconduct during closing argument

The petitioner claims that his right to a fair trial was violated as a result of the prosecutor's misconduct during closing argument. Habeas Corpus Petition, paragraph 19, Ground Four. Specifically, the petitioner claimed that the prosecutor engaged in improper argument when he: (1) maintained that the petitioner had fabricated a story to explain any possible discovery of his semen at the crime scene; (2) asserted that the Skakel family had conspired to fabricate an alibi for the petitioner; (3) contended that the Skakel family believed that the petitioner was guilty of the murder; (4) referred to the petitioner as a "killer" and a "spoiled brat"; (5) asserted that the petitioner had masturbated on the victim's body; and (6) misused evidence in an audiovisual presentation to make it appear that the petitioner had confessed to the murder. Id., at 49-61. The petitioner's claim should be denied because the Connecticut Supreme Court reasonably applied clearly established federal law in rejecting the petitioner's claim on direct appeal. Memorandum in Support of Respondent's Motion for Summary at 44-68; Objection to Petitioner's Motion for Summary Judgment at 24-51.

### e. The petitioner's claim regarding admission of evidence of his allegedly coerced statements

The petitioner claims that admission of the testimony regarding the statements that he made while a student at the Elan School violated his right to due process of law because the statements were the product of coercion. Habeas Corpus Petition, paragraph 19, Ground Six. The petitioner claims, therefore, that he is entitled to federal habeas corpus relief. The petitioner's claim fails because the Connecticut Supreme Court reasonably applied the principles of the United States Supreme Court's decision in Colorado v. Connelly, 479 U.S. 157, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986), the controlling precedent on the issue, when it rejected the petitioner's claim on direct appeal. Memorandum in Support of Respondent's Motion for Summary at 72-75; Objection to Petitioner's Motion for Summary Judgment at 51-53.

### 2. The petitioner cannot show a high probability of success with regard to the additional claims that he seeks to add in his amended habeas corpus petition

In addition to the five claims raised in his original habeas corpus petition, the petitioner also bases his request for bail on the seven new claims that he seeks to ad in his amended habeas petition. Motion to Amend Petition; Amended Habeas Corpus Claims at 11-41. The petitioner argues that these additional claims also provide a "substantial constitutional" basis for his claim of federal habeas relief. Memorandum in Support of Motion for Bail at 9. The petitioner, however, does not explicitly claim that he has a high probability of success with regard to any of his new claims. Indeed, the petitioner may be reluctant to make such a claim because, as the respondent demonstrated in his memorandum in opposition to the petitioner's motion for leave to amend, each of the

petitioner's claims is entirely without merit. <u>See</u> Memorandum in Opposition to Petitioner's Motion for Leave to Amend Petition for a Writ of Habeas Corpus, dated March 3, 2009 [Document 63] (hereinafter "Memorandum in Opposition to Motion to Amend") at 7-23.

> **a.** **The petitioner's additional claims regarding denial of his petition for a new trial on grounds of newly discovered evidence**

In his motion foe leave to amend his petition, the petitioner seeks to add two claims to his federal habeas petition alleging that the state trial court denied his right to a fair trial, his right to present a defense and his right to confront witnesses against him when it refused to order a new trial based on this newly discovered evidence. Grounds Six and Eight, Amended Habeas Corpus Claims at 11, 24.  It is well established, however, that federal habeas corpus relief is not available for the denial of a new trial based on newly discovered evidence.  Indeed, 28 U.S.C. § 2254(a) provides that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court *only* on the ground that he is in custody in violation of the Constitution or laws . . . of the United States." (Emphasis added.)  It is clear, however, that "[t]he Constitution itself . . . makes no mention of new trials." <u>Herrera v. Collins</u>, 506 U.S. 398, 408, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993).  Thus, "*the existence merely of newly discovered evidence relevant to the guilt of a state prisoner is not a ground for relief on federal habeas corpus*." (Emphasis in original.) <u>Id</u>., 506 U.S. at 400.

Accordingly, the petitioner has not presented this court with substantial constitutional claims that have a high probability of success in Grounds Six and Eight of his amended habeas corpus petition. <u>See</u> Memorandum in Opposition to Motion to Amend at 8-9.

### b. The petitioner's additional claims under
### Brady v. Maryland

In his motion for leave to amend his habeas corpus petition, the petitioner seeks to add four claims arising from alleged violations of the United States Supreme Court's ruling in Brady v. Maryland, supra. Specifically, the petitioner claims that his Brady rights were violated when the state: (1) suppressed evidence of a "book deal" involving one of the investigators in the case; (2) engaged in a "pattern of nondisclosure of exculpatory evidence" and suppressed "profile reports" and "time lapse data"; (3) suppressed "exculpatory evidence that pointed to a third party as the killer. . ."; and (4) suppressed impeachment evidence pertaining to one of the state's witnesses at trial. Grounds Seven, Nine, Ten and Twelve, Amended Habeas Corpus Claims at 21-24, 28-41. When the claims that the petitioner seeks to add to his petition are considered, it is clear that none is a substantial constitutional claim with a high probability of success.

**Ground Seven:** The petitioner first claims that the state suppressed evidence pertaining to a "book deal" involving Frank Garr, an investigator in the case, and Leonard Levitt, a freelance writer. Ground Seven, Amended Habeas Corpus Claims at 21. After an evidentiary hearing on the petitioner's petition for a new trial, the state trial court found that there was no evidence that "at the time of trial, Garr had any expectation of financial gain from a book that his friend Levitt might one day write." Memorandum of Decision at 19, Appendix A. Thus, the "book deal" that is the basis of the petitioner's claim simply did not exist. Moreover, Attorney Michael Sherman, the petitioner's trial counsel, testified that "prior to trial, he had 'pretty good information' from three persons – Tim Dumas, Mark Fuhrman, and Dominick Dunne, all of whom had written books about the case – that Garr

had a 'book deal.'" Id., at 17. Thus, the petitioner cannot show that the evidence pertaining to the alleged "book deal" was suppressed within the meaning of Brady. See United States v. Payne, 63 F.2d 1200, 1208 (2nd Cir. 1995), cert. denied, 516 U.S. 1165, 116 S.Ct. 1056, 134 L.Ed.2d 201 (1996).

Moreover, the petitioner cannot show that he was prejudiced in any way by the state's alleged failure to disclose information pertaining to the "book deal" because Garr never testified before the jury. Garr's only testimony in the case was outside the presence of the jury during a hearing on a motion in limine filed by the state. Transcript of May 9, 2002, State v. Skakel, Case No. CR00-135792-T, Judicial District of Stamford-Norwalk at 181-83, Appendix B; Transcript of May 10, 2002, State v. Skakel, Case No. CR00-135792-T, Judicial District of Stamford-Norwalk at 131-56, Appendix B. The petitioner, therefore, cannot show that Garr's alleged bias had any effect on the evidence presented to the jury or on the jury's verdict. Thus, the petitioner can show neither that the evidence regarding the "book deal" was favorable to him nor that it was material within the meaning of Brady. See Strickler v. Greene, 527 U.S. 263, 281-82, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999).

Accordingly, the petitioner has failed to show that the claim he seeks to add to his habeas corpus petition in Ground Seven is a substantial constitutional claim that has a high probability of success. See Memorandum in Opposition to Motion to Amend at 10-12.

**Ground Nine:** The petitioner claims that his right to a fair trial, right to present a defense and his rights under Brady v. Maryland, were violated when the trial court denied his motion for a new trial based on "the State's pattern of nondisclosure of exculpatory evidence and suppression of profile reports and the time lapse data." Ground Nine, Amended Habeas Corpus Claims at 28-36. The petitioner claims a "pattern of

nondisclosure" based on the state's alleged failure to disclose: (1) a composite sketch of Kenneth Littleton; (2) two "profile reports" prepared by state investigators pertaining to two other suspects in the murder, Littleton and the petitioner's brother, Thomas Skakel; and (3) a "Time Lapse Data" document that contained information regarding a possible connection between Littleton and several unsolved murders of young women. Id., at 28-29. Thus, in effect, the petitioner claims that he was prejudiced by the collective effect of the state's suppression of these items under United States v. Bagley, 473 U.S. 667, 675, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985) and Kyles v. Whitley, 514 U.S. 419, 436-37, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995). The petitioner's claim lacks merit because he cannot show that the state suppressed any of these items or that they were material to his defense.

The petitioner claims that the state failed to disclose a composite sketch of a person seen near the crime scene on the night of the murder that he contends bears a resemblance to Kenneth Littleton. Ground Nine, Amended Habeas Corpus Claims at 28. On direct appeal, the Connecticut Supreme Court rejected this claim, upholding the trial court's ruling that the petitioner and his trial counsel were on notice of the existence of the composite sketch through the investigative reports disclosed to the them by the state. State v. Skakel, 276 Conn. 633, 702-703, 888 A.2d 985, cert. denied, 549 U.S. 1030, 127 S.Ct. 578, 166 L.Ed.2d 428 (2006). When the petitioner reasserted the claim in his petition for a new trial, the state trial court also rejected it. The trial court concluded that "[b]ecause petitioner knew of the sketch before trial, it cannot be considered 'suppressed' or part of a 'pattern of nondisclosure.'" Memorandum of Decision at 23, Appendix A.

The petitioner also contends that the state failed to disclose profile reports pertaining to Littleton and Thomas Skakel that were prepared by John Solomon, a former

investigator for the state's attorney's office. Ground Nine, Amended Habeas Corpus Claims at 28. In rejecting the petitioner's claim in his petition for a new trial, the trial court noted that Michael Sherman, the petitioner's trial counsel, testified that he had spoken to John Solomon extensively prior to trial and that Solomon told him about the reports. Memorandum of Decision, <u>Skakel v. State</u>, CV05-0006524-S, Judicial District of Stamford-Norwalk, at 12, Appendix A. In addition, the court noted that the criminal trial record indicated that the petitioner became aware of the reports during trial. <u>Id</u>. Accordingly, the court rejected the petitioner's claim "[b]ecause this evidence was known to the petitioner at trial, and the petitioner failed to pursue a copy of the reports with due diligence. . . ." <u>Id</u>., at 12-13.

The petitioner also contends that the state failed to disclose a "Time Lapse Data" document that was also prepared by John Solomon. Ground Nine, Amended Habeas Corpus Claims at 28-29. The document contained information regarding a possible connection between Kenneth Littleton and several unsolved murders of young women. <u>Id</u>., at 29. The petitioner cannot prevail on his claim because the record makes clear that the time-lapse data was not suppressed. At the hearing on the petitioners motion for a new trial, Michael Sherman, the petitioner's trial counsel, testified that documents provided to him by the state in pretrial discovery put him on notice that during the investigation of the murder of Martha Moxley, state investigators had considered the possibility that Littleton was a serial murderer. Transcript of April 19, 2007, <u>Skakel v. State</u>, Case No. CR05-4006524-S, Judicial District of Stamford-Norwalk at 227-30, Appendix D. Sherman acknowledged that information pertaining to a number of murder victims mentioned in the time-lapse data was also included in the pretrial discovery provided to him by the state.

14

Transcript of April 20, 2007, <u>Skakel v. State</u>, Case No. CR05-4006524-S, Judicial District

of Stamford-Norwalk (hereinafter T. 4/20/07) at 6-11, Appendix D.  Moreover, Sherman

acknowledged that documents provided to him by the state in pretrial discovery specifically

mentioned that state investigators were compiling "chronological time-lapse data on

Kenneth Littleton. . . ." T. 4/20/07 at 12, Appendix D.  Finally, Sherman testified that prior

to trial, he spoke with Solomon "at length about a great . . . number of crimes which he

believed Ken Littleton may have been responsible for." T. 4/20/07 at 13-14, Appendix D.

Thus, the record shows that petitioner's counsel was aware of "essential facts permitting

him to take advantage of any exculpatory evidence [included in the time lapse data]."

<u>United States v. LeRoy</u>, 687 F.2d 610, 618 (2nd Cir. 1982), <u>cert</u>. <u>denied</u>, 459 U.S. 1174,

103 S.Ct. 823, 74 L.Ed.2d 1019 (1983).

In any event, the petitioner cannot show that he was prejudiced by the alleged

nondisclosure of the evidence in question.  The evidence that the petitioner complains was

not disclosed to him in Ground Nine could have had relevance only to potential third-party

culpability defenses that he might have raised at trial.  Under Connecticut law, however,

evidence of third-party culpability is admissible at trial only where the defendant can

"directly connect the defendant to the crime. . . ." <u>State v. West</u>, 274 Conn. 605, 625, 877

A.2d 787, <u>cert</u>. <u>denied</u>, 546 U.S. 1049, 126 S.Ct. 775, 163 L.Ed.2d 201 (2005).  "It is not

enough to show that another had motive to commit the crime . . . nor is it enough to raise

a bare suspicion that some other person may have committed the crime of which the

defendant is accused." <u>Id</u>.

Here, the allegedly suppressed evidence does no more than raise a "bare suspicion"

that someone else may have committed the crime.  The petitioner has offered nothing to

show that either Kenneth Littleton or Thomas Skakel can be directly connected to the murder of Martha Moxley. In the absence of such a showing, the allegedly suppressed evidence would not have been admissible at trial. See State v. West, supra. Because the petitioner has offered nothing to show that the evidence would have been admissible and, therefore, useful to him, he cannot not show that it was material within the meaning of Brady. See United States v. Bagley, 473 U.S. at 678; Kyles v. Whitley 514 U.S. at 433-34.

Accordingly, the petitioner has failed to show that the claim he seeks to add to his habeas corpus petition in Ground Nine is a substantial constitutional claim that has a high probability of success. See Memorandum in Opposition to Motion to Amend at 12-17.

**Ground Ten:** The petitioner claims that his conviction was obtained in violation of his right to a fair trial, right to present a defense and his rights under Brady v. Maryland, because the state suppressed "exculpatory evidence that pointed to a third party as the killer of Martha Moxley." Ground Ten, Amended Habeas Corpus Claims at 36-37. The petitioner's claim is meritless because he cannot show that the allegedly suppressed evidence was material to his defense.

The "exculpatory evidence" that the petitioner claims the state suppressed was a letter from a woman named Julia Wilson to James Cameron, the chief of police in Madison, Connecticut. In the letter, Wilson informed Chief Cameron that her brother, Andrew Wilson, who resided in Madison, was "seriously mentally ill" and had been having "paranoid delusions." Ground Ten, Amended Habeas Corpus Claims at 37. The letter detailed Andrew's long history of drug and alcohol abuse and the treatment that he had been receiving for his mental illness. Id., at 37-39. The letter also described threats that Andrew Wilson had made toward Dirk Peters and his father, Jack Peters. The letter further stated

that Andrew had a conversation with his brother, Ted, during which Andrew claimed that Dirk Peters had murdered Martha Moxley. Id., at 39.

On August 5, 1993, two and a half weeks after Julia Wilson wrote to Chief Cameron, the Greenwich police contacted the Madison police to inform them that Andrew Wilson had been arrested and charged with the murder of Jack Peters in Greenwich. Ground Ten, Amended Habeas Corpus Claims at 40. Because Andrew Wilson was approximately the same age as the petitioner and Martha Moxley, and because he and Dirk Peters lived in Greenwich at the time of Moxley's murder; Id., at 37-38; the petitioner now claims that the state violated Brady when it failed to disclose the information included in Julia Wilson's letter to the petitioner's counsel prior to trial. Id., at 40.

The petitioner's claim lacks merit because he cannot establish the materiality of the allegedly suppressed evidence. The only evidence connecting Dirk Peters to the murder of Martha Moxley is the uncorroborated statement of Andrew Wilson, a mentally ill and delusional individual. There is no evidence to connect Andrew Wilson to Moxley's murder. The information included in Julia Wilson's letter, therefore, would not have been admissible to establish a defense of third party culpability or, indeed, for any other reason. See State v. West, 274 Conn. at 625-26; State v. Saunders, 267 Conn. 363, 383, 838 A.2d 186, cert. denied, 541 U.S. 1036, 124 S.Ct. 2113, 158 L.Ed.2d 722 (2004) (evidence irrelevant where there is little connection between evidentiary and principle facts). Accordingly, the petitioner cannot establish that the information contained in Julia Wilson's letter was material within the meaning of Brady. See Kyles v. Whitley, 514 U.S. at 433-34.

Accordingly, the petitioner has failed to show that the claim he seeks to add to his habeas corpus petition in Ground Ten is a substantial constitutional claim that has a high probability of success. <u>See</u> Memorandum in Opposition to Motion to Amend at 17-19.

**Ground Twelve:** The petitioner claims that his conviction was obtained in violation of his right to a fair trial, his right to confront witnesses and his rights under <u>Brady v. Maryland</u> because the state suppressed "valuable impeachment evidence" regarding the state's witness, Gregory Coleman. Ground Twelve, Amended Habeas Corpus Claims at 41. The petitioner's claim lacks merit because he cannot establish any of the components of a <u>Brady</u> violation regarding the alleged suppression of the impeachment evidence.

The petitioner apparently contends that in 1998, John M. Regan, a New York lawyer who had previously represented Coleman, provided the state with impeachment evidence pertaining to his former client. Ground Twelve, Amended Habeas Corpus Claims at 41. Ground Twelve of the amended petition alleges that Regan told an individual who identified himself as a Connecticut prosecutor that "he hoped the that the prosecutor was not serious about using Coleman's testimony to accuse someone of murder." <u>Id</u>., at 41. Regan's expression of hope with regard to the prosecutor's intentions, however, does not constitute impeachment evidence. Thus, the petitioner's claim fails to allege that the state suppressed impeachment evidence or that any such evidence was favorable to him. <u>See</u> <u>Strickler v. Greene</u>, 527 U.S. at 281-82.

But even if the petitioner had alleged that the state suppressed impeachment evidence relating to Coleman, the petitioner could not show that any such evidence was material. In <u>United States v. Bagley</u>, <u>supra</u>, the court stated that "suppression of evidence amounts to a constitutional violation *only* if it deprives the defendant of a fair trial.

18

Consistent with "[the court's] overriding concern with the justice of the finding of guilt," a constitutional violation occurs, and the conviction must be reversed, *only* if the evidence is material in the sense that its suppression undermines confidence in the outcome of the trial." (Citation omitted.) Bagley, 473 U.S. at 678. Thus, "evidence is material, and constitutional error results from its suppression . . . 'if there is a *reasonable probability* that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" (Emphasis added.) Id., at 682. The petitioner cannot meet this standard because the jury was well aware of Coleman's personal problems that were the basis of Regan's opinion regarding his credibility and because Coleman's testimony was corroborated by two reliable witnesses.

Because Coleman died before he could testify at trial, a transcript of his testimony at the probable cause hearing was admitted into evidence and read to the jury. Transcript of May 16, 2002, State v. Skakel, Case No. CR00-135792-T, Judicial District of Stamford-Norwalk at 51-54, Appendix E. The transcript included the extensive cross-examination of Coleman by the petitioner's counsel. Transcript of April 18, 2001, State v. Skakel, Case No. CR00-135792-T, Judicial District of Stamford-Norwalk at 98-131, Appendix E; Transcript of April 19, 2001, State v. Skakel, Case No. CR00-135792-T, Judicial District of Stamford-Norwalk at 2-120, Appendix E. During his cross-examination, the petitioner's trial counsel, Attorney Michael Sherman, questioned Coleman aggressively on numerous matters relating to his credibility. Id.

Moreover, the jury heard testimony from two witnesses corroborating Coleman's testimony that the petitioner had confessed to the murder. Gregory Coleman's widow, Elizabeth Coleman, testified that her husband told her about the petitioner's confession in

19

1986. Transcript of May 20, 2002, <u>State v. Skakel</u>, Case No. CR00-135792-T, Judicial District of Stamford-Norwalk at 88-93, Appendix E. Jennifer Pease testified that Coleman told her about the petitioner's confession in 1979 while they were both still students at the Elan School. Transcript of May 29, 2002, <u>State v. Skakel</u>, Case No. CR00-135792-T, Judicial District of Stamford-Norwalk at 99-101, 108, Appendix E.

When these facts are considered, it is clear that the petitioner cannot show "a reasonable probability" that the result of his trial would have been different if Attorney Regan's opinion regarding Coleman's credibility had been disclosed to the defense. <u>See</u> <u>United States v. Bagley</u>, 473 U.S. at 682; <u>Kyles v. Whitley</u>, 514 U.S. at 433-434. Thus, the petitioner cannot show that Regan's opinion regarding Coleman's credibility was material within the meaning of <u>Brady</u>.

Accordingly, the petitioner has failed to show that the claim he seeks to add to his habeas corpus petition in Ground Twelve is a substantial constitutional claim that has a high probability of success. <u>See</u> Memorandum in Opposition to Motion to Amend at 19-22.

### c.   The petitioner's additional claim of ineffective assistance of counsel

In Ground Eleven of his amended petition, the petitioner claims that his conviction was obtained in violation of his right to effective assistance of counsel and a fair trial "due to the actions and conduct of [his] trial counsel." Ground Eleven, Amended Habeas Corpus Claims at 40. In order to prevail on this claim, the petitioner must show that his "counsel's performance 'fell below an objective standard of reasonableness' and that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" <u>Cox v. Donelly</u>, 387 F.3d 193, 197 (2nd Cir 2004),

quoting <u>Strickland v. Washington</u>, 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).  The petitioner, however, has failed to cite any act or omission on the part of his counsel that would constitute ineffective assistance.  Because the petitioner has not even attempted to state a factual basis for his ineffective assistance claim, the claim must be deemed to be lacking merit. <u>See</u> <u>Cox v. Donnelly</u>, <u>supra</u>, 197.

Accordingly, the petitioner has failed to show that the claim he seeks to add to his habeas corpus petition in Ground Eleven is a substantial constitutional claim that has a high probability of success. <u>See</u> Memorandum in Opposition to Motion to Amend at 22-23.

It is well established that "[b]ail should be granted . . . pending post-conviction habeas corpus review only when the petitioner has raised *substantial constitutional claims upon which he has a high probability of success. . . .*" (Emphasis added.) <u>Calley v. Callaway</u>, 496 F.2d at 702; <u>see</u> <u>also</u> <u>Mapp v. Reno</u>, 241 F.3d at 226.  Here, the petitioner has fallen far short of meeting this standard.  For this reason alone, the petitioner's request for bail should be denied.

### C. The Petitioner Has Not Demonstrated The Existence of Extraordinary Circumstances That Would Support The Granting Of His Application For Bail

In <u>Mapp v. Reno</u>, <u>supra</u>, the Second Circuit stated that "a habeas petitioner should be granted bail only in unusual cases, or when extraordinary or exceptional circumstances exist which *make the grant of bail necessary to make the habeas remedy effective*." (Emphasis added.) <u>Id</u>., 241 F.3d at 226, <u>quoting</u> <u>Ostrer v. United States</u>, 584 F.2d at 596 n.1; <u>see</u> <u>also</u> <u>Grune v. Coughlin</u>, 913 F.2d at 44.  Consequently, federal courts have found such "extraordinary circumstances" to exist only in rare cases.

Federal courts have granted bail where the petitioners were serving short sentences that would expire prior to the completion of federal review. See, e.g. Levy v. Parker, 396 U.S. 1204, 90 S.Ct. 1, 24 L.Ed.2d 25, affirmed by full court, 396 U.S. 804, 90 S.Ct. 47, 24 L.Ed.2d 60 (1969)(all but twelve days of three-year sentence served); Noyd v. Bond, 395 U.S. 683, 689, 89 S.Ct. 1876, 23 L.Ed.2d 631 (1965)(all but two days of one-year sentence served); Boyer v. Orlando, 402 F.2d 966, 968 (5th Cir. 1968)(120-day sentence for disorderly conduct). In Johnston v. Marsh, 227 F.2d 528 (3rd Cir. 1955), the Third Circuit upheld the district court's order granting bail to a petitioner who whose physical condition was deteriorating as a result of his confinement. In some cases, federal courts have granted bail to successful habeas petitioners pending the outcome of the state's appeal. See, e.g. Marino v. Vasquez, 812 F.2d 499, 507 (9th Cir. 1987); LaFrance v. Bohlinger, 487 F.2d 506, 507 (1st Cir. 1973). In this case, however, the petitioner can offer no such compelling circumstances in support of his request for bail.

Here, the petitioner argues that "the sheer magnitude of substantial constitutional claims [that he has raised] should justify the unusual remedy of granting bail." Memorandum in Support of Motion for Bail at 11. The petitioner's argument is unpersuasive because, as demonstrated herein in Section II.B., supra, the petitioner's claims, though numerous and imaginative, are all lacking in merit. But even if the petitioner had been able to raise potentially meritorious claims, that fact alone would not constitute an extraordinary circumstance that would justify bail. Indeed, in Lucas v. Hadden, 790 F.2d 365 (3rd Cir. 1986), the Third Circuit stated that it is not "appropriate to grant bail prior to ruling on a state habeas petition solely on the ground that there is a high likelihood of success on the merits, especially absent exhaustion of state remedies." Id. at 367.

22

The petitioner also contends that the alleged denial of his liberty interest as a juvenile constitutes an extraordinary circumstances that warrants his release on bail. Memorandum in Support of Motion for Bail at 11. Thus, the petitioner maintains that the unlawfulness of his confinement alone justifies bail in this case. In Iuteri v. Nardoza, 662 F.2d 159 (2nd Cir. 1981), however, the Second Circuit rejected precisely such a claim, noting that "[v]irtually all habeas corpus petitioners argue that their confinement is unlawful." Id., at 161. The petitioner next argues that he should be admitted to bail because "this Court is the first venue in which he has been eligible to seek bond pending consideration of his claims." Memorandum in Support of Motion for Bail at 11-12. But the mere fact that the petitioner was not eligible for bail in state court does not make him any more worthy of bail in this proceeding. Cf. Rado v. Meachum, 699 F. Supp. at 26 (state has an interest in finality of its criminal convictions).

Finally, the petitioner contends that the most recent Brady violations that he has alleged constitute "extraordinary circumstances warranting bail" because the state's "pattern of nondisclosure will force him to effectively start over in his quest for exhaustion." Memorandum in Support of Motion for Bail at 12. The petitioner's argument is unpersuasive for three reasons. First, although the petitioner complains about delay, he has known about the facts underlying his most recent Brady claims for at least three months and has not yet begun his "quest for exhaustion" by filing a state habeas petition. See Memorandum in Opposition to Motion to Amend at 32. Second, the petitioner seeks add four other claims to his federal habeas petition which he has known about for years and he has still not raised them in a state proceeding that would result in their exhaustion. Id., at 26-32. If the petitioner intends to pursue the four earlier, unexhausted claims, he

can exhaust them, as well as the two more recent claims, in a single state action. Thus, the petitioner is not prejudiced by any delay in initiating state proceedings on the two most recent claims. Finally, because the petitioner's two most recent Brady claims are so utterly lacking in merit, he cannot be prejudiced by any delay in there adjudication. See Section II.B.2.c., supra.

Accordingly, the petitioner has failed to demonstrate that "extraordinary or exceptional circumstances exist which make the grant of bail necessary to make the habeas remedy effective." Mapp v. Reno, 241 F.3d at 226

### D. The Petitioner's Claim That He Poses No Risk Of Flight Does Not Merit The Granting Of His Application For Bail

Finally, the petitioner claims that bail is appropriate in this case because he is not a flight risk. Memorandum in Support of Motion for Bail at 12-13. While the respondent does not dispute that the petitioner poses little risk of flight, that fact in itself does not warrant granting him bail. "The state has a significant interest in bringing some degree of finality to its criminal prosecutions and the judgments of its courts after conviction." Rado v. Meachum, 699 F. Supp. at 26. "Because of the conviction, the Government has a justified interest in petitioner's continued incarceration...." Iuteri v. Nardoza, 662 F.2d at 161. The petitioner has been fairly convicted and has concluded the direct appeals of his conviction. Thus, it would be inappropriate to release him pending the outcome of this habeas corpus proceeding.

## III. CONCLUSION

For all of the reasons set forth above, the petitioner has failed to demonstrate that he is entitled to the extraordinary remedy of bail while the collateral challenge to his state conviction is pending. Accordingly, the petitioner's motion for a hearing to set bail should be denied.

Respectfully submitted,

PETER J. MURPHY, WARDEN
MacDOUGALL-WALKER CORRECTIONAL
    INSTITUTION
DEPARTMENT OF CORRECTION
STATE OF CONNECTICUT

RESPONDENT

By:   /s/ Michael E. O'Hare           
MICHAEL E. O'HARE
Supervisory Assistant State's Attorney
Civil Litigation Bureau
Office of the Chief State's Attorney
300 Corporate Place
Rocky Hill, Connecticut 06067
Telephone: (860) 258-5887
Facsimile: (860) 258-5968
E-mail: michael.ohare@po.state.ct.us
Federal Bar No. ct 02058

SUSANN E. GILL
Senior Assistant State's Attorney
Office of the State's Attorney
Judicial District of Fairfield
1061 Main Street
Bridgeport, Connecticut 06604
Telephone: (860) 579-6506
Facsimile: (860) 382-8401
E-mail: susann.gill@po.state.ct.us
Federal Bar No. ct 05415

<u>**CERTIFICATION**</u>

I hereby certify that a copy of the foregoing document was mailed, first class postage prepaid, to counsel for the petitioner: Attorney Hope C. Seeley, Attorney Hubert J. Santos and Attorney Sandra L. Snaden, Santos and Seeley, P.C., 51 Russ Street, Hartford, Connecticut, 06106, Tel. No. (860) 249-6548, Fax No. (860) 724-5533, on March 19, 2009.

    /s/ Michael E. O'Hare
MICHAEL E. O'HARE
Supervisory Assistant State's Attorney